A03A0164. SERRITT v. THE STATE.
(582 SE2d 507)

BARNES, Judge.

Charles Bradley Serritt appeals his convictions of guilty but mentally ill, contending that the State presented insufficient evidence to support the verdict and that he should have been acquitted by reason of insanity. For the reasons that follow, we affirm.

On appeal, the evidence must be viewed in the light most favorable to support the verdict; indeed, the evidence is construed in favor of the verdict. Serritt no longer enjoys a presumption of innocence. Moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990). Determining the credibility of witnesses and weighing the evidence are functions within the province of the jury. *Turner v. State*, 206 Ga. App. 683, 684 (426 SE2d 168) (1992). The matter of whether Serritt was insane or mentally ill or not when he committed the offenses for which he was charged was for determination by the jury under the facts and circumstances proved. *Livingston v. State*, 193 Ga. App. 502, 504 (2)

(388 SE2d 406) (1989). "Because the jury resolves issues of credibility, including defendant's explanation, as well as conflicts in the evidence, once the determination has been made, an appellate court cannot substitute its judgment for that of the jury." Id.

The State indicted Serritt on ten counts: one count of attempting to enter an auto; four counts of entering an auto; two counts of burglary; one count of financial transaction card theft; and two counts of theft by taking. Several church employees testified that Serritt attempted to break the window of a car in their parking lot with a rubber mallet, and then used the mallet handle to pry open the window of a truck and got inside. When one of the witnesses began to walk toward the truck, Serritt got out and began walking away. All of the witnesses agreed that Serritt did not seem to care if he got caught and that he seemed to be "in his own world" as if nothing mattered anymore.

The director of treatment services at a north Georgia mental health center testified that she was home in bed sick one afternoon when she looked up and saw Serritt standing in her bedroom with a beer in his hand. She put her glasses on and asked him what he was doing; when he did not respond, she jumped out of bed and told him to move down the hall, down the stairs, and out of the house. He obeyed, and when they got to the living room, the witness saw that Serritt had kicked in the screen on the door and crawled through. She told him to unlatch the door and leave, and he did, driving away in her Lincoln Town Car. The witness discovered that Serritt had stolen her wallet with her credit cards, a picture of herself, and a box of coins.

The witness, who was qualified as an expert due to her extensive clinical experience with the mentally ill, testified that Serritt appeared to be impaired from drinking alcohol but did not appear to be delusional. Delusional people, she said, do not respond to immediate direction and do not possess the capability to go through a house in a short time and look through things in a methodical, well-thought-out way as Serritt had. She testified that he had a blunted affect, consistent with substance abuse, depression, or psychiatric medication, but evinced no symptoms of psychosis. She determined later that he had been admitted to two programs she had supervised, a detoxification and crisis stabilization program and a partial hospitalization program, although she did not remember him and had not treated him individually.

A Chattanooga patrol officer testified that he was dispatched to an accident at a hotel parking deck, where he found Serritt in the seat of a Lincoln Town Car. Serritt appeared to be extremely intoxicated, although his blood alcohol level was below the limit, and had no valid ID, although he offered several items as identification, such

as the picture ID of a child and a credit card. He said the car belonged to him, but could not confirm the owner's name after the police discovered who the owner was. The officer testified that Serritt displayed no delusional behavior, appeared to know right from wrong, and knew who the officer was and what he was doing. A Dalton police detective testified that the Lincoln Town Car that Serritt was driving contained silver, wine, and a check taken from a household that had been burglarized while the owner was out of town. That homeowner testified in more detail about other items missing from his house in addition to the silver, wine, and check.

Finally, the director of forensic services at Northwest Georgia Regional Hospital testified that he examined Serritt in response to a court order to evaluate his competency to stand trial and degree of criminal responsibility. In his opinion Serritt would have no difficulty assisting his attorney at trial, understanding the charges and basic courtroom procedures, and controlling his behavior in court. Even though he was mentally ill, diagnosed with major depression with psychotic features, Serritt did not meet the criteria to be found not responsible for his actions, because he was not operating under a delusional compulsion, was able to distinguish right from wrong, and was not under the involuntary influence of an intoxicating substance. Serritt's actions indicated he was capable of organized thinking, and he admitted that he did not pay any attention to right or wrong when he began drinking.

Before the jury heard evidence in this case, the trial court charged them regarding Serritt's insanity defense, noting that OCGA § 16-3-2 provides that a person shall not be found guilty of a crime if, at the time of the act or omission constituting the crime, that person did not have the mental capacity to distinguish between right and wrong in relation to the act. The court then further charged them regarding a second form of insanity, delusional compulsion, and finally charged regarding the mental status of guilty but mentally ill under OCGA § 17-7-131 (a) (2), directing the jury that

> The term mentally ill means having a disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life. The term mentally ill does not include a mental state shown only by repeated unlawful or antisocial conduct.

The trial court recharged the jury on those definitions before the testimony of the doctor who examined Serritt for the State.

Serritt's sister testified for the defense, describing her brother's long history of mental problems following his return from serving in

the Army in Vietnam. He had tried to return to college and worked at various jobs but rarely stayed long, and until 1994 he would not leave the house. He had lived with his mother since his father died in 1984 and received disability payments from Social Security and the Veterans Administration. He talked to voices and had flashbacks to the war, and his sister testified that he had stayed at the VA hospital several times and she had him involuntarily committed once.

Three employees from the Whitfield County Clerk's Office testified that, for a period of six to eight weeks before his arrest on these charges, Serritt came in several times a week, sometimes several times a day, seeking copies of certain records. He always sought the exact same records and never seemed to understand that he was getting the same thing every time. One of the clerks testified that she just made multiple copies of the records ahead of time and handed him a new copy each time he asked, at least 20 times and maybe as many as 50 times. Serritt would become agitated or frustrated if he did not think he was getting what he wanted but never looked anyone in the eyes while he was communicating. He was always in the same mode, "totally out of it."

"Insanity is an affirmative defense which the defendant must prove by a preponderance of the evidence." (Citations and punctuation omitted.) *Harris v. State*, 256 Ga. 350, 353 (5) (349 SE2d 374) (1986). The

> appropriate standard of appellate review of the sufficiency of the evidence with regard to a jury's finding of sanity in a criminal case is whether after reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime.

*Brown v. State*, 250 Ga. 66, 71-72 (2) (c) (295 SE2d 727) (1982). Applying that standard to this case, the evidence is clearly sufficient to support the jury's finding that Serritt was sane when he committed the offenses.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED MAY 21, 2003.

*Jerry W. Moncus*, for appellant.

*Kermit N. McManus, District Attorney, Herbert M. Poston, Jr.,*
*Assistant District Attorney,* for appellee.