**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 1, 2017**

# In the Court of Appeals of Georgia

A16A1782. ENTWISLE v. THE STATE.                    DO-059 C

DOYLE, Chief Judge.

Following a jury trial, Joe Don Entwisle was convicted of first degree burglary,[1] second degree burglary,[2] criminal trespass,[3] two counts of theft by taking,[4] theft by receiving,[5] computer invasion of privacy,[6] and possession of a firearm by a

---

[1] OCGA § 16-7-1 (b).

[2] OCGA § 16-7-1 (c).

[3] OCGA § 16-7-21 (a).

[4] OCGA § 16-8-2.

[5] OCGA § 16-8-7 (a).

[6] OCGA § 16-9-93 (c).

convicted felon.[7] Entwisle appeals the denial of his subsequent motion for new trial, arguing that trial counsel was ineffective; the trial court erred by admitting his prior convictions without holding a hearing as required by OCGA § 24-4-403; and the evidence was insufficient to support his conviction for first degree burglary. For the reasons that follow, we reverse the denial of Entwisle's motion for new trial as to computer invasion of privacy, and we affirm his remaining convictions.

> On appeal, the evidence must be viewed in the light most favorable to support the verdict; indeed, the evidence is construed in favor of the verdict. [Entwisle] no longer enjoys a presumption of innocence. Moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[8]

So viewed, the record shows that in early 2013, Entwisle approached the back door to Villa Hizer's home, wearing a back pack, and told her that he lived on a nearby street and was looking for his missing dog. Hizer had never seen Entwisle during the 35 years she had lived in her home, nor had she seen a dog matching the description given by Entwisle. A few weeks later, on April 23, 2013, Hizer returned

---

[7] OCGA § 16-11-131 (b).

[8] *Serritt v. State*, 261 Ga. App. 344 (582 SE2d 507) (2003). See also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

home after being out of town, entered through the carport door, which appeared to be unlocked, and noticed that certain doors were ajar and dresser doors were on the floor. The following items were missing from Hizer's home: watches, jewelry, baseball cards, a laptop computer, a gun, sterling silver lighters, and a piece of paper listing security codes. Hizer and police also discovered that a lock on one of her dining room windows had been broken, and there were pry marks on the outside of the window frame.

Also on April 23, 2013, police arrived at a location in response to a "fight call." When they arrived, officers learned that one of the suspects had fled the scene in a green Ford heading toward Payne Road. Shortly thereafter, an officer spotted the Ford parked near what appeared to be an abandoned house on Payne Road. The officer saw that the back door to the house was ajar, leading him to believe that the fleeing suspect had entered the home.

The officer attempted to enter the home, but the door was blocked by a stove; he then saw Jennifer Rowland, later identified as Entwisle's girlfriend, inside the house. While the officer spoke with Rowland, he heard another person running inside the house. The officer went around to the front door and knocked, and Rowland opened the door and squeezed through, making sure the officer could not see inside.

3

While speaking with Rowland, the officer heard another person moving around inside the house, and Rowland eventually admitted her boyfriend, Entwisle, was inside. Rowland agreed to go inside; the officer, concerned for his safety, prevented her from closing the door and followed her into the house, where he found Entwisle hiding in a bedroom. While he was in the house, the officer observed two new bicycles in the kitchen, several suitcases, and many cardboard boxes. He applied for a warrant to search the house, but the warrant was denied.

Thereafter, Hizer purchased a new computer and attempted to restore her computer files using Carbonite, an online backup system she had installed on the laptop that was stolen from her home. While doing so, Hizer learned that someone had used the laptop the day after it was stolen and opened her Quicken files, which contained private financial data, including her credit card and bank account information.

An investigator obtained from Carbonite the IP addresses that were used to access Hizer's computer, including one from the Kings Inn motel. The investigator then learned that Rowland had rented a room at that motel, and Entwisle had stayed there with her. The investigator also discovered that someone using Hizer's computer after it was stolen had accessed an email account containing Entwisle's name.

4

After learning that Entwisle had been the subject of the investigation at the Payne Road house on the same day that Hizer's home had been burglarized, the investigator obtained a search warrant for the Payne Road house, which warrant he executed on May 6, 2013. During the search, police recovered numerous stolen items, some of which belonged to Hizer and her husband, including jewelry, a watch, a piece of paper containing various security alarm codes, a pair of eyeglasses, and Hizer's husband's driver's license.[9] Police also found a crowbar, which the investigator later compared to and found consistent with the markings on Hizer's window frame.

On March 9, 2013, at approximately 10:00 a. m., James McCrary and his wife returned to their home on Burnett Ferry Road in Floyd County after breakfast and discovered that the glass on the door leading from their patio to the garage was broken and scattered on the floor inside the garage.[10] Later that afternoon, police arrived at Holland Drive in response to a 911 call reporting "suspicious activity." Police found various items, including tools, strewn on the side of the roadway near the woods. An officer followed a trail through the woods, along which he found

[9] Police also found a level with Entwisle's name written on it in marker, as well as a document indicating that Entwisle and Rowland were authorized to occupy the house.

[10] The door was locked with a deadbolt, and it required a key to be unlocked.

5

additional items on the ground, including a hand truck, until he reached the back of McCrary's property on nearby Burnett Ferry Road. There, the officer saw a free-standing workshop behind McCrary's property, and McCrary confirmed that the items found in the woods belonged to him and were taken from his workshop.

Entwisle's girlfriend, Rowland, testified later at trial that at his request, she dropped Entwisle off on Holland Drive on March 9, 2013. Pursuant to his request, Rowland returned to the same spot approximately 15 minutes later, but she could not find Entwisle. While she was driving and looking for him, he called and advised her that he had seen police in the area; Rowland left the area after she received the call, saw the police cars, and "had a bad feeling." Later that night, Rowland was at a friend's house less than a mile from where she dropped Entwisle off on Holland Road when Entwisle arrived on a bike. Entwisle, who had multiple scratches, was angry with Rowland because she would not help him retrieve from the woods items that he said he got from a nearby home; Entwisle told her that he had to cover himself and the items with leaves when the police arrived in the area.

Following a jury trial, Entwisle was convicted of first degree burglary, second degree burglary, criminal trespass, two counts of theft by taking, theft by receiving,

6

computer invasion of privacy, and possession of a firearm by a convicted felon.[11] The trial court denied Entwisle's motion for new trial, and this appeal followed.

1. Entwisle contends that he received ineffective assistance of counsel. We find no basis for reversal.

> "[T]o prevail on a claim of ineffective assistance of counsel, [Entiwsle] must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[12]

---

[11] The jury also found Entwisle guilty of another count of second degree burglary and another count of theft by taking, but those counts were merged with others during sentencing.

[12] (Citations and punctuation omitted). *Allen v. State*, 296 Ga. 785, 792-793 (10) (770 SE2d 824) (2015) citing *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

(a) Trial counsel filed and argued a motion to suppress the evidence found at the Payne Road house. Entwisle argues, however, that trial counsel rendered ineffective assistance in doing so by "fail[ing] to argue any applicable law and surrender[ing] the issue so quickly as if no motion was filed at all." Specifically, Entwisle contends that trial counsel should have argued that Entwisle had a protected Fourth Amendment interest in the Payne Road house based upon his status as a guest and because he was performing renovation work on the property in exchange for rent, making the property a workspace.

In his motion to suppress, Entwisle averred that: he lived on 107 Lindsey Terrace; the Payne Road house was owned by Delane Lynch, his sister-in-law; no one lived in the Payne Road house; and Lynch had given Entwisle permission to be at the Payne Road home to work. Based upon those assertions, the trial court concluded that Entwisle did not have standing to challenge the search of the Payne Road house and denied the motion to suppress.

At trial, the investigating officer testified that the house was "very dilapidated, . . . had no running water[,] . . . had no power. . . . It was in rough shape. . . . [I]t was very dirty. . . . The house was . . . basically to me unliveable." Lynch, the owner, testified that during the time Entwisle was found in her house, "[v]agrants [went] in

8

and out of my house all the time because it's – the grass [has grown] up all the way to the roof, and they can go in and out easily." At the time the police executed the search warrant of the house, they found a note, which stated: "As of 4/22/2013, property at 124 Payne Road is being occupied by Joe Don Entwisle and Jenny Rowland. The house is not abandoned. They are there to clean up, stay, protect, and reside. . . . Any questions concerning searching the house should be at the discretion of the occupants of the house." The note was signed by Lynch. Rowland testified at trial that she and Entwisle lived in the house on Payne Road "[f]or a brief time," conceding that it did not have utilities or running water. According to Rowland, instead of paying rent for the house, she and Entwisle were supposed "to fix the place up."

"In order to claim the protection of the Fourth Amendment against unreasonable search and seizure, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable."[13] "[A] defendant must demonstrate both a 'subjective' expectation of

---

[13] (Citations and punctuation omitted.) *Smith v. State*, 284 Ga. 17, 21 (3) (663 SE2d 142) (2008).

9

privacy and that the expectation is one that society is willing to recognize as reasonable."[14]

Regardless of whether Entwisle lived in the Payne Road house, "a place need not be respondent's 'home,' temporary or otherwise, in order for him to enjoy a reasonable expectation of privacy there. The Fourth Amendment protects people, not places, and provides sanctuary for citizens wherever they have a legitimate expectation of privacy."[15] "A person has a legitimate expectation of privacy in his . . . home and may have a legitimate expectation of privacy in a house in which the person is an overnight guest; however, one who is merely present with the consent of the householder may not claim the protection of the Fourth Amendment."[16]

---

[14] (Citation omitted.) *Rashid v. State*, 292 Ga. 414, 418 (3) (737 SE2d 692) (2013).

[15] (Punctuation omitted.) *Moses v. State*, 328 Ga. App. 625, 627 (2) (760 SE2d 217) (2014), quoting *Arnold v. State*, 237 Ga. App. 857, 859 (1) (517 SE2d 97) (1999).

[16] (Punctuation omitted.) *Brown v. State*, 295 Ga. 695, 697 (2) (763 SE2d 710) (2014), quoting *Smith v. State*, 284 Ga. 17, 21 (3) (663 SE2d 142) (2008).

10

Pretermitting whether a favorable ruling on the motion to suppress the evidence was possible,[17] however, Entwisle has failed to demonstrate that counsel's failure to argue more emphatically the motion constituted ineffective assistance. "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them."[18] Given Entwisle's position at the time he filed the motion to suppress that neither he nor any one else lived in the Payne Road house at the time of the search and that he lived elsewhere, we find no basis to conclude that counsel's decision against arguing more strenuously for suppression of the evidence "was, at the time of trial, unreasonable."[19] And "the fact that present

---

[17] The State argues that the officer's initial entry into the Payne Road house on April 23, 2013, was justified by exigent circumstances. In the order denying the motion for new trial, the trial court agreed, concluding that "the officer was allowed to enter the house . . . to conduct a protective sweep[,] . . . [and t]he officer had an articulable suspicion that the suspect was in the house."

[18] (Punctuation omitted.) *Flemister v. State*, 317 Ga. App. 749, 757 (4) (b) (732 SE2d 810) (2012), quoting *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008).

[19] *Hampton v. State*, 295 Ga. 665, 670 (2) (763 SE2d 467) (2014).

11

counsel disagrees with trial counsel's strategy does not render such strategic decision unreasonable."[20]

(b) Entwisle maintains that trial counsel was ineffective by failing to object to the hearsay testimony by Hizer introduced by the State to support the computer invasion of property charge. We agree.

At trial, Hizer testified that after the burglary at her home, she learned from Carbonite that someone had used her computer to access her Quicken files, which contained financial information regarding her bank and credit card accounts, and she immediately contacted her bank and credit card companies as a result. Entwisle argues that this testimony constituted inadmissible hearsay.

OCGA § 24-8-801 (c) provides: "'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[21]

---

[20] Id., citing *McKenzie v. State*, 284 Ga. 342, 349 (4) (e) (667 SE2d 43) (2008).

[21] Entwisle was tried in September 2014. Therefore, the new Evidence Code applied to his trial. See Ga. L. 2011, p. 99, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

The State argues that Hizer's testimony was not hearsay, but was instead admissible to explain her subsequent conduct in contacting her bank and credit card companies and to show how the investigator identified Entwisle as a potential suspect in the burglary. Pursuant to former OCGA § 24-3-2, "[w]hen, in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct."[22] That Code section, however, was not carried over into the new Evidence Code.[23] Hizer's statement about what she learned from Carbonite was introduced to prove that Entwisle used her computer to access her financial

---

[22] *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982).

[23] Even if OCGA § 24-3-2 was in effect at the time of Entwisle's trial, it would not have authorized the admission of Hizer's testimony because "where the conduct and motives of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial) then the information, etc. on which he or she acted shall not be admissible under . . . OCGA § 24-3-2. In the case before us, the conduct and motives of [Hizer and Sailors] were not relevant to the issues on trial." *Teague v. State*, 252 Ga. 534, 535 (1) (314 SE2d 910) (1984) (punctuation omitted).

13

information and therefore constitutes hearsay.[24] The State does not contend that Hizer's statement is admissible under any other exception to the hearsay rule.

Although the decision of whether to interpose certain objections is generally a matter of trial strategy and tactics, trial counsel provided no reason for failing to object to [Hizer's] hearsay testimony about [someone using her computer to access her financial information]. In assessing the objective reasonableness of a lawyer's performance, we are not limited to the subjective reasons offered by trial counsel for his conduct. Instead, we consider whether "a reasonable lawyer might have done what the actual lawyer did – whether for the same reasons given by the actual lawyer or different reasons entirely;" if the answer to that question is yes, then the "actual lawyer cannot be said to have performed in an objectively unreasonable way." In this case, we cannot identify any reason why a reasonable attorney would have decided not to object to the hearsay testimony that provided the only evidentiary basis for a conviction of [computer invasion of privacy].[25] As a result, trial counsel was deficient for failing to object to [Hizer's] hearsay testimony.

[24] In its order denying Entwisle's motion for new trial, the trial court concluded that Hizer's testimony was cumulative of the investigating officer's testimony regarding Carbonite. But the officer testified only that information he obtained from Carbonite led him to an email address linked to Entwisle; he did not testify that Entwisle used Hizer's computer in an attempt to access her financial information.

[25] To support a conviction for computer invasion of privacy as charged in the indictment, the State was required to prove that Entwisle "use[d] a computer or computer network with the intention of examining [Hizer's] employment, medical, salary, credit, or any other financial or personal data . . . with knowledge that such examination is without authority. . . ." OCGA § 16-9-93 (c).

14

The prejudice from trial counsel's deficiency is clear. [Hizer's] hearsay testimony was the only evidence offered to prove the elements of the [computer invasion of privacy] offense[]. Had this evidence been excluded, there would not have been sufficient evidence to convict [Hizer] of [that offense]. Thus, but for counsel's performance, more than a reasonable probability exists that the outcome of the trial would have been different, and this amounted to ineffective assistance of counsel. Accordingly, we reverse the trial court's denial of [Entwisle's] motion for a new trial with respect to the [criminal invasion of privacy conviction].[26]

2. Entwisle argues that the trial court erred by admitting evidence of prior bad acts. This enumeration presents no basis for reversal.

OCGA § 24-4-404 (b) provides in relevant part:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

A three-part test determines the admissibility of evidence under this Code section: (1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially

---

[26] (Citations and punctuation omitted.) *Taylor v. State*, 337 Ga. App. 486, 497-498 (4) (b) (i) (788 SE2d 97) (2016).

15

outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act. A decision to admit such evidence will not be reversed absent a clear abuse of discretion.[27]

Pursuant to OCGA § 24-4-403, evidence offered for a proper purpose under this rule may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[28]

On appeal, Entwisle argues that the trial court erred by admitting the prior bad acts under OCGA § 24-4-404 (b) without undertaking the balancing test required by OCGA § 24-4-403. At the outset, we note that Entwisle has failed to identify precisely what evidence he challenges, nor does he provide any record citations to specific rulings by the trial court on this issue or his objections thereto, hindering our

---

[27] (Footnote and punctuation omitted.) *Chase v. State*, 337 Ga. App. 449, 454 (3) (787 SE2d 802) (2016), quoting *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015) and citing *Olds v. State*, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016) (noting that although the Court's application of the test in *Bradshaw* "may have caused some confusion," "*Bradshaw* correctly identified the general requirements for the admission of evidence of other acts.").

[28] *Smart v. State*, 299 Ga. 414, 417 (2) (788 SE2d 442) (2016).

16

review of this enumeration. "It is not this Court's job to cull the record on behalf of the [appellant] to find alleged errors. Accordingly, [Entwisle] has failed to carry his burden of showing an abuse of discretion by the trial court in admitting the similar transaction evidence. . . ."[29]

Notwithstanding Entwisle's waiver of this enumeration, however, it presents no basis for reversal. Our review of the record shows that although the trial court did not make specific findings regarding whether the probative value of the prior crimes was outweighed by its prejudicial impact, it explicitly referenced the balancing test and noted that "the evidence must satisfy Rule 403." Thus, by admitting the evidence, the trial court implicitly found that the evidence was admissible pursuant to this test.[30] Further,

> it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter. As we have noted, OCGA § 24-4-403 offers an extraordinary remedy that must be used sparingly

---

[29] (Citation and punctuation omitted.) *Hunt v. State*, 336 Ga. App. 821, 829 (2) (783 SE2d 456) (2016), quoting *Maxwell v. State*, 290 Ga. 574, 575 (2) (722 SE2d 763) (2012).

[30] See *Chase v. State*, 337 Ga. App. 449, 455 (3) (a) (787 SE2d 802) (2016).

because it results in the exclusion of concededly probative evidence. In close cases, the balance is struck in favor of admissibility.[31]

Again, Entwisle has not offered any specific argument regarding the prejudicial impact of the evidence,[32] failing to meet his burden of showing an abuse of discretion.[33] Finally, Entwisle has failed to establish that admission of the prior crimes was not harmless in light of the strong evidence admitted at trial that he committed the crimes for which he was convicted.[34]

---

[31] (Footnote and punctuation omitted; emphasis in original.) Id., quoting *Wilson v. State*, 336 Ga. App. 60, 63 (2) (b) (783 SE2d 662) (2016).

[32] Although Entwisle lists and analyzes multiple cases addressing prejudice in this context, he fails to tie them in any way to the prior acts in this case, which he also fails to identify with any specificity.

[33] See *Hunt*, 336 Ga. App. at 829 (2).

[34] See *Hood v. State*, 299 Ga. 95, 105-106 (4) (786 SE2d 648) (2016) (admission of evidence of prior crimes was harmless because "the evidence that [a]ppellant committed the crimes for which he was convicted was strong, making it highly unlikely that the jury convicted him based on [the prior crimes]"), citing *Peoples v. State*, 295 Ga. 44, 55 (757 SE2d 646) (2014) ; *Lingo v. State*, 329 Ga. App. 528, 533 (765 SE2d 696) (2014) (physical precedent only) (finding harmless evidence admitted in violation of OCGA § 24-4-404 because of strong evidence that the defendant committed the charged crimes).

3. Entwisle contends that the evidence was insufficient to support his conviction for first degree burglary of McCrary's home.[35] We disagree.

OCGA § 16-7-1 (b) provides in relevant part that "[a] person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he . . . enters or remains within an occupied, unoccupied, or vacant dwelling house of another. . . ."

Entwisle contends that the State failed to prove that he entered the building based upon McCrary's trial testimony that the person who broke the glass "didn't get into the house. They . . . just broke the window." This argument is meritless.

The evidence supported a finding that Entwisle, without authority, entered the workshop at the back of McCrary's property and took multiple items, and he broke the glass on the door leading from the patio to the garage of McCrary's occupied home, but the door was locked with a deadbolt and could not be opened without a key. Viewing the evidence in a light most favorable to the verdict, there was sufficient evidence from which a rational trier of fact could find beyond a reasonable

---

[35] Entwisle challenges his conviction on Count 3, which charged him with first degree burglary of McCrary's home. Count 4 charged Entwisle with second degree burglary of McCrary's workshop; Entwisle was found guilty on Count 4, but it was merged with Count 3 at sentencing.

doubt that Entwisle "'[broke] the plane of the structure with the intent to steal or with the intent to commit a felony therein.'"[36]

*Judgment affirmed in part and reversed in part. Andrews and Ray, JJ., concur.*

---

[36] *Meadows v. State*, 264 Ga. App. 160, 164 (3) (590 SE2d 173) (2003), citing *Hewatt v. State*, 216 Ga. App. 550, 551 (455 SE2d 104) (1995) (defendant entered victim's home by "breaking the plane" when he attempted to crawl in a window); *Mullinnix v. State*, 177 Ga. App. 168, 169 (338 SE2d 752) (1985) (defendant "[broke] the plane" of a building when he reached through a door knob hole to remove an alarm device with intent to steal). See also *Kent v. State*, 84 Ga. 438, 439 (11 SE 355) (1889) ("[A]n entry by turning a bolt, not made for the purpose of lawful business, nor within business hours, is an entry by breaking.").