**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 4, 2021**

# In the Court of Appeals of Georgia

A21A0709. ALLEN v. THE STATE.

BROWN, Judge.

Following a jury trial, Marcellous Allen was convicted of three counts of violation of the Georgia Street Gang Terrorism and Prevention Act, OCGA § 16-15-1 et seq. He appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence and contending that his convictions violate his constitutional right to free association. Allen also contends that the trial court erred in (1) admitting a recording over his hearsay and Confrontation Clause objections; (2) admitting evidence of Allen's gang involvement; and (3) denying his motions for mistrial. For the reasons that follow, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of

innocence." (Citation and punctuation omitted.) *Solomon v. State*, 342 Ga. App. 836 (805 SE2d 293) (2017). So viewed, the record shows that around 3:00 p.m. on October 3, 2017, a "shootout" occurred outside the G&T Snack Bar in Hartwell. Employees working in nearby offices testified that they heard multiple sets of gunfire and observed men running by outside, including one man wearing a white tank top who was armed with a gun. Police responded to the shooting and after speaking with witnesses, learned that Ray Tate, Allen, and some other men were involved in the shootout. Shortly after the incident, police found Tate hiding with a gun in a nearby apartment and apprehended him. On the following day, police arrested Allen. Allen did not have a gun at the time of his arrest. In his interview with police, Allen admitted being present during the shootout, but that he ran when Ray Tate started shooting and did not return fire.

Police also interviewed a bystander who witnessed the shootout. In the interview, which was played for the jury, the bystander stated he saw three men, including Allen and "Young Money," start shooting at Ray Tate. When the bystander was called to testify, he denied seeing anything to do with the shootout. A female eyewitness testified that she heard gunshots and saw Allen, Ray Tate, and "Young Money" running, but she did not see a gun.

2

One of Allen's associates,[1] "Slime," testified that on the day of the incident, he met Allen and some others near the G&T Snack Bar, that they walked to the G&T and approached Ray Tate, that Tate started shooting, and that another associate called "Young Money"[2] shot back at Tate before everyone started running. Slime testified that he saw Allen with a gun and that Allen ran into an alley before Slime heard more shots fired. According to Slime, Allen was a member of the Sex-Money-Murder gang.[3]

On the night prior to the shootout, Ray Tate was on Facebook live, repeatedly asking "where murder gang at, stop hiding" and calling Allen a "bitch." Tate also called out "Slime" and "Young Money." An audio recording of this Facebook live was played for the jury. Records obtained from Allen's cellular phone showed that at 9:46 p.m. that same night, Allen received a text message stating, "Ray on live

---

[1] The associate received immunity in exchange for his testimony.

[2] The associate clarified that "Young Money" was Quenton Simpson, Allen's co-indictee.

[3] The State also submitted photographs and posts from Allen's Facebook, indicating Allen was affiliated with the "Sex-Money-Murder" gang. An investigator admitted as an expert in criminal street gangs testified that "Sex-Money-Murder" is a subset of the "Bloods," a criminal street gang. The parties subsequently stipulated that "Sex-Money-Murder" is a criminal street gang.

talkin bout murder gang stop hiding." The records reflected the text message was "read." Allen's phone records also established that Allen and Slime exchanged multiple phone calls in the approximately twenty minutes leading up to the shootout.

In a joint indictment,[4] Allen was charged with four counts of violation of the Street Gang Terrorism and Prevention Act and one count each of aggravated assault, possession of a firearm during commission of a felony, possession of marijuana with intent to distribute, illegal use of communication facility, and possession of a firearm by a convicted felon. The jury found Allen guilty of three counts of violation of Street Gang Terrorism and Prevention Act (Counts 1-3) and not guilty of aggravated assault and possession of a firearm during commission of a felony (Counts 4 and 5). The trial was bifurcated, and the jury returned a not guilty verdict on possession of a firearm by a convicted felon and one count of violation of the Street Gang Terrorism and Prevention Act (based on possession of a firearm by a convicted felon). The counts charging possession of marijuana with intent to distribute and illegal use of communication facility were severed and tried separately. Allen filed a motion for new trial, and the trial court denied the motion, as amended.

---

[4] Allen's co-indictee, Quenton Simpson, pleaded guilty pursuant to a negotiated plea deal prior to Allen's trial.

1. Allen argues that the evidence was insufficient to sustain his convictions for violation of the Street Gang Terrorism and Prevention Act. Specifically, he contends that the State failed to establish that he committed the predicate acts of "criminal street gang activity" because he was acquitted of the predicate offenses charged in the indictment. We disagree.

Allen was charged with three counts of violating the Georgia Street Gang Terrorism and Prevention Act by participating in criminal street gang activity through the commission of aggravated assault (Count 1), possession of a firearm during commission of a felony (Count 2), and discharging a firearm near a public highway (Count 3), while associated with "Sex-Money-Murder, a subset of the Bloods, a criminal street gang."[5] The indictment charged Allen with two of the predicate offenses, namely aggravated assault and possession of a firearm during commission of a felony.

In order to establish that Allen violated the Street Gang Terrorism and Prevention Act, the State was required to prove four elements: "(1) the existence of a criminal street gang, [as] defined in OCGA § 16-15-3 (2) . . . ; (2) [Allen's]

---

[5] As earlier stated, Allen was charged with a fourth count of violation of the Street Gang Terrorism and Prevention Act through the commission of possession of a firearm by a convicted felon. Allen however was acquitted of this charge.

5

association with the gang; (3) that [Allen] committed one of the offenses identified in OCGA § 16-15-3 (1); and (4) that the crime was intended to further the interests of the gang." (Citation and punctuation omitted.) *Boyd v. State*, 306 Ga. 204, 209 (1) (b) (830 SE2d 160) (2019). Accord *Broxton v. State*, 306 Ga. 127, 133 (2) (829 SE2d 333) (2019). Allen only disputes the sufficiency of the evidence with regard to the third element because he was acquitted of the predicate offenses, and we conclude that sufficient evidence supports the remaining elements.

"An acquittal on one charge does not affect the sufficiency of the evidence as to another charge, even if the conviction is a compound offense, and the acquittal was for a predicate offense." *Houseworth v. State*, 348 Ga. App. 119, 124 (1) (c) (820 SE2d 231) (2018). Accordingly, even though Allen was acquitted of aggravated assault and possession of a firearm during commission of a felony, any evidence offered during the trial may be used to evaluate the sufficiency of the evidence for his convictions for violation of the Street Gang Terrorism and Prevention Act. See *Allen v. State*, 351 Ga. App. 680, 684 (832 SE2d 659) (2019). On appeal, "[w]e neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." (Citation and punctuation omitted.) *Bynes v. State*, 336 Ga. App. 223 (784 SE2d 71) (2016). "[T]he jury's verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case." *Morris v. State*, 340 Ga. App. 295, 297 (797 SE2d 207) (2017).

Here, the State presented sufficient evidence from which a jury could conclude that Allen committed the predicate offenses of aggravated assault, possession of a firearm during commission of a felony, and discharging a firearm near a public highway. Eyewitness testimony established that a shootout involving multiple men took place outside the G&T Snack Bar, that at least one of the men was armed with a gun, and that Allen was involved. One of the men involved in the shootout testified that Allen had a gun and that he heard gunshots after Allen ran into an alley. Further, one bystander stated that he saw Allen shooting at Ray Tate. Although the bystander recanted his statement at trial, "it is the jury's role to resolve conflicts in the evidence and determine the credibility of witnesses, and the presence of such conflicts does not render the evidence insufficient." (Citation and punctuation omitted.) *Benton v. State*, 356 Ga. App. 441, 444 (1) (c) (847 SE2d 625) (2020) ("[t]his law applies even when a witness recants her previous statement"). See also *Walker v. State*, 348 Ga. App.

7

273, 275 (1), n.1 (821 SE2d 567) (2018). Finally, the State presented evidence of Allen's motive in the form of Ray Tate's Facebook live, in which he called out the "Sex-Money-Murder" gang as well as Allen individually.

Moreover, the trial court charged the jury on the law regarding party to a crime. Under this theory, "[o]ne is culpable as a party to a crime, even if he did not directly commit it, if he intentionally aids or abets in the commission of the crime or intentionally advises, encourages, hires, counsels, or procures another to commit the crime." (Citations and punctuation omitted.) *Stewart v. State*, 243 Ga. App. 860, 861 (1) (534 SE2d 544) (2000). "Presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Citation and punctuation omitted.) Id. Although the jury acquitted Allen of the charged predicate offenses, we conclude that evidence was sufficient to prove that Allen committed the predicate offenses as a party to the crimes. Cf. *Daniely v. State*, 309 Ga. App. 123, 124-125 (1) (709 SE2d 274) (2011) (finding evidence sufficient to affirm conviction of possession of a knife during the commission of the felony of aggravated assault, despite the defendant's acquittal for predicate offense). See also *Dixon v. State*, 309 Ga. 28, 35-36 (2) (b) (843 SE2d 806)

(2020) (rejecting contention that the principle of "party to the crime" is not available for a charge of participating in criminal gang activity under OCGA § 16-15-4 (a)).

To the extent Allen raises an inconsistent verdict argument, such an argument lacks merit. "As a general rule, inconsistent verdicts occur when a jury in a criminal case renders seemingly incompatible verdicts of *guilty* on one charge and *not guilty* on another. In Georgia, . . . we have abolished the rule that inconsistent verdicts require reversal." (Emphasis in original.) *McElrath v. State*, 308 Ga. 104, 108 (2) (a) (839 SE2d 573) (2020). See also *State v. Robinson*, 275 Ga. App. 117 (619 SE2d 806) (2005) ("[t]he Supreme Court of Georgia abolished the inconsistent verdict rule . . . and the relevant question on appeal is whether the evidence viewed in the light most favorable to the conviction is sufficient to support the verdict") (citation omitted).

> [I]nconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*McElrath*, 308 Ga. at 108-109 (2) (a), citing *United States v. Powell*, 469 U. S. 57, 64-65 (105 SCt 471, 83 LE2d 461) (1984). "Because of this, the issue is not whether

9

an acquittal on one charge would logically necessitate acquittal on another charge on which the jury convicted the defendant; rather the sole question is whether the evidence viewed in favor of the conviction was sufficient to support the guilty verdict." (Citation, punctuation, and emphasis omitted.) *Presley v. State*, 358 Ga. App. 277, 281 (1) (855 SE2d 30) (2021). In sum, we conclude that the evidence presented against Allen was sufficient to authorize a rational jury to find beyond a reasonable doubt that he was guilty of the offenses that served as a predicate for his convictions for violation of the Street Gang Terrorism and Prevention Act.

2. Allen also asserts that his convictions violate his constitutional right to free association. Allen posits that because he was acquitted of the charged predicate offenses, he was, in effect, convicted based on "mere association."[6]

Our Supreme Court previously has held that OCGA § 16-15-4 (a) does not infringe upon the First Amendment right to freedom of association:

> The act of associating with compatriots in crime is not a protected associational right. To support a conviction, the accused must be shown to have conducted or participated in criminal street gang activity through

---

[6] One of Allen's convictions for violation of the Street Gang Terrorism and Prevention Act was premised on discharging a firearm near a public highway, an offense for which he was not separately charged in the indictment. We therefore find Allen's argument in this regard inapplicable to this conviction.

10

the commission of an actual criminal act. Mere association is insufficient. OCGA § 16-15-4 (a) comports with due-process requirements because it punishes conduct, not association. It does not unconstitutionally criminalize membership in an organization because the statute does not impermissibly establish guilt by association alone. Moreover, the right to association does not provide protection to those organizations that commit a felony. Criminal gang activity is not protected activity even when committed by a group exercising their constitutional right to free association.

(Citations and punctuation omitted.) *Rodriguez v. State*, 284 Ga. 803, 810 (4) (671 SE2d 497) (2009). As concluded in Division 1, there was sufficient evidence from which a jury could conclude that Allen committed the predicate offenses. The fact that the jury decided to return a not guilty verdict on the aggravated assault and possession of a firearm during commission of a felony charges does not render Allen's convictions unconstitutional. See id.

3. Allen contends that the trial court erred in admitting over his objection an audio recording of the Facebook video by Ray Tate because it violates the Confrontation Clause and constitutes inadmissible hearsay. We disagree.

(a) Allen contends that the trial court's admission of the recording violated his Confrontation Clause rights because "the defense was not able to confront the

11

statements made [in the recording]." Because the statements in the recording do not implicate the Confrontation Clause, we disagree.

As our Supreme Court has explained, "[t]he Confrontation Clause imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant." (Citation and punctuation omitted.) *McCord v. State*, 305 Ga. 318, 321 (2) (a) (825 SE2d 122) (2019). Thus, "the Confrontation Clause applies only to out-of-court statements that are testimonial in nature." (Citation, punctuation, and emphasis omitted.) *McClendon v. State*, 299 Ga. 611, 617 (4) (b) (791 SE2d 69) (2016). "A statement is testimonial if its primary purpose was to establish evidence that could be used in a future prosecution." (Citation and punctuation omitted.) *Franklin v. State,* 298 Ga. 636, 640 (2) (784 SE2d 359) (2016). See also *Crawford v. Washington*, 541 U. S. 36, 51-52 (III) (A) (124 SCt 1354, 158 LE2d 177) (2004) (describing the "core class of 'testimonial' statements" as "*ex parte* in-court testimony or its functional equivalent — that is, material . . . that declarants would reasonably expect to be used prosecutorially"). After "a determination is made that a statement is nontestimonial in nature, normal rules regarding the admission of hearsay apply." (Citation and punctuation omitted.)

12

*McCord*, 305 Ga. at 322 (2) (a). Here, the statements made in the Facebook live recording clearly were not intended for use in a future prosecution and thus were not testimonial. See, e.g., *Favors v. State*, 296 Ga. 842, 844-845 (2) (770 SE2d 855) (2015) (co-conspirator's statements to girlfriend that "'the lick went bad'" and the victim was shot were not testimonial in nature because they were not "made under circumstances indicating the declarant's intent to provide evidence for a future prosecution"). Accordingly, we turn to whether the statements in the recording were impermissible hearsay.

(b) For a statement to constitute hearsay, it must be "offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801(c). Here, the statements contained in the recording were not offered to prove the truth of the matter asserted. Rather, the recording was offered to show its effect on Allen and his motive for participating in the shootout. See *Gates v. State*, 298 Ga. 324, 326 (2) (781 SE2d 772) (2016) (text messages victim sent to defendant's girlfriend not offered for their truth but for effect on defendant, establishing his motive for the murder). In other words,

> the statements are not hearsay because the State offered them for a purpose that did not require the jury to assume that the substance of the statements was true. . . . Rather, [the] statements were significant

13

because they had been made and because they were likely to have had an effect on the hearer, [Allen].

*Brown v. State*, 332 Ga. App. 635, 637 (1) (774 SE2d 708) (2015). Accordingly, Allen's claim that this evidence was inadmissible hearsay is without merit.[7]

4. Allen also contends that the trial court erred in admitting "highly prejudicial evidence which had little to no probative value." While his enumeration fails to identify the "highly prejudicial evidence," Allen seems to take issue with the admission of photographs posted to his Facebook profile showing Allen's gang affiliation as well as testimony from the investigator admitted as an expert in criminal street gangs and a former prison guard. "The admission of evidence is committed to the sound discretion of the trial court, and the trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." *Anglin v. State*, 302 Ga. 333, 335 (2) (806 SE2d 573) (2017).

The trial court admitted the photographs over Allen's objection that their probative value was substantially outweighed by the danger of unfair prejudice. See

---

[7] Allen argues there is insufficient evidence that he heard the recording for it to have been admitted as "effect on listener." We disagree and find that the State presented sufficient evidence from which the jury could conclude that Allen saw, or at least heard about, the statements made in Tate's Facebook live.

OCGA § 24-4-403 ("Rule 403"). Allen objected to the expert's testimony stating it was "bad character evidence" and that the defense already had conceded he was in a criminal street gang. The trial court overruled the objection. During the testimony of the former prison guard, Allen voiced an objection under Rule 403, arguing that "we've already admitted gang member association. . . . The prejudicial effect so far outweighs the probative value . . . [s]ince we've admitted the fact[.]" The court allowed the guard's testimony over the objection.

On appeal, Allen again argues that evidence of his gang membership, including the photographs and the testimony from both witnesses, was "unnecessarily cumulative," and thus "highly prejudicial with little to no probative value," because his trial counsel admitted during opening argument that Allen was a member of "Sex-Money-Murder," a criminal street gang. But counsel's statements during his opening were not evidence, and the State still had to prove that Allen was a member of a "criminal street gang" known as "Sex-Money-Murder," as well as a connection between that gang and the crimes at issue. See *Jordan v. State*, 307 Ga. 450, 453 (2) (836 SE2d 86) (2019). See also OCGA § 16-15-3. We conclude that the trial court did not abuse its discretion under Rule 403 when it admitted the evidence of gang

15

activity.[8] See *Jordan*, 307 Ga. at 453 (2) (trial court did not abuse its discretion in admitting evidence of defendant's gang activity where defendant was charged, inter alia, with criminal gang activity, despite defense lawyer's statements during his opening that defendant was a member of "'a gang'" and that he was "'in a bind . . . with this gang'").

---

[8] Allen also asserts without citation to the record that "[t]he State introduced numerous photos of [him] in prison." Allen has not identified which photograph or photographs he takes issue with out of the nearly thirty admitted into evidence. The record shows that the defense objected to all of the photographs "on the basis that since we've admitted he's a gang member . . . these pictures . . . relate to proving he's a gang member, but they're so inflammatory and prejudicial that they're really bad character evidence. . . ." The defense then singled out one photograph, stating "I'd point out that's DOC now." The State responded that the photograph was relevant because it showed Allen flashing a gang sign. Which photograph the parties were referring to is unclear. In the absence of a specific reference to the record or transcript, this Court will not search for and may not consider that enumeration. Court of Appeals Rule 25 (c) (2) (i). "It is not this Court's job to cull the record on behalf of the appellant to find alleged errors." (Citation and punctuation omitted.) *Entwisle v. State*, 340 Ga. App. 122, 131 (2) (796 SE2d 743) (2017). Accordingly, Allen has failed to carry his burden of showing an abuse of discretion by the trial court in admitting the photographs. See *Westmoreland v. State*, 287 Ga. 688, 696-697 (10) (699 SE2d 13) (2010) (appellant failed to show reversible error affirmatively by the record, where appellant contended that trial court erred in admitting photographs, but appellant failed to identify which of the hundreds of photographs admitted were allegedly objectionable ones so as to allow the appellate court to isolate them for review of appellant's claim and whether he lodged a contemporaneous objection and if so the nature of the objection).

5. Allen lastly contends that the trial court erred in denying his motions for mistrial following "two instances of the State negligently showing documentation [of Allen's status as a convicted felon] on counsel tables" during voir dire. He also contends that the court erred in denying his motion for mistrial following the testimony of the former prison guard implying that Allen had been in prison. Lastly, Allen argues that the trial court should have granted a mistrial based on the photographs showing him in prison.

(a) *Motions during voir dire*. On the first day of voir dire, the State left a copy of its notice that it sought recidivist punishment face-up on the defense table. The record shows that a discussion was held in the trial judge's chambers, during which defense counsel argued as follows:

> Any [prospective] juror walking by that table knows that [Allen is] a felon now, if they read it at all. . . . There's no way we can know who or . . . how many jurors saw it. . . . I don't think the State did it intentionally because it's bad for them, but I think the entire jury panel's inextricably tainted, and it's going to call into question fundamental fairness of any jury we pick from this panel. I don't think there's any way to proceed at this point because there's no way in good faith that we can know who exactly has seen this without actually saying he's a felon. I'm moving for a continuance for the term based off that.

17

Subsequently, the trial court denied the motion and instructed that it would proceed with the case.

On the following day — day two of voir dire — Allen's counsel brought to the trial court's attention that the State had a notebook on its table during the first day of voir dire, and the cover of the notebook listed the charges against Allen, including possession of a firearm by a convicted felon. Defense counsel then "clarif[ied]" his prior motion as follows: "I don't think I ever actually said the word 'mistrial' yesterday, but I would yet again move for mistrial and a continuance for the term and renew that motion at this point." The trial court explained that it had treated the previous motion as one for mistrial and further noted that "[h]aving gone back in the courtroom yesterday after the hearing and looked at the distances, that further reaffirmed in my mind that the motion should be denied." The court then went on to deny the renewed motion based on the State's notebook because it "doesn't involve anything that hasn't already been covered with jurors in voir dire." Voir dire was not transcribed.

As a preliminary matter, "[a] mistrial is not a proper remedy . . . before the jury has been empaneled and sworn." *Mitchell v. State*, 284 Ga. App. 209 (1) (644 SE2d 147) (2007). This is because "the time for making a motion for mistrial is not ripe

until the case has begun, and the trial does not begin until the jury has been impaneled and sworn." (Citation and punctuation omitted.) *Purnell v. State*, 355 Ga. App. 899, 901 (843 SE2d 637) (2020). Instead, "the proper procedural tool [is] either a challenge to the poll or a motion for a postponement to impanel other jurors[.]" (Citation and punctuation omitted.) *Sharpe v. State*, 272 Ga. 684, 687 (5) (531 SE2d 84) (2000). See also *Purnell*, 355 Ga. App. at 901.

Here, Allen apparently sought to postpone the trial and restart the voir dire process. Despite the nomenclature of the motions, the trial court appropriately considered their merits. See *Purnell*, 355 Ga. App. at 901. See also *Lord v. State*, 304 Ga. 532, 535 (2) (820 SE2d 16) (2018) (trial court properly addressed merits of defendant's motion for mistrial which, in substance, was a request for a new jury panel). And under the circumstances, we find no abuse of discretion in its declining to postpone Allen's trial in order to impanel other jurors. Based on the record before us, there is no evidence that any prospective juror saw or read either document, or that even if a prospective juror did see or read the document, that the juror ultimately ended up on the jury. Moreover, as to the second document, the trial court specifically found that the charge of possession of a firearm by a convicted felon "already [had] been covered with jurors in voir dire." While voir dire was not transcribed, and thus

19

we are unable to determine what exactly was "covered," we must keep in mind that "[c]ontrol of voir dire is vested in the sound discretion of the trial court and appellate courts will not interfere with that discretion unless it has been abused." *Mitchell*, 284 Ga. App. at 209 (1).

(b) *Motion during trial.* Allen also moved for a mistrial during the testimony of an officer who testified that he previously worked at a state prison. The officer testified that during a conversation with Allen in April 2016, Allen confirmed that he was a member of Sex-Money-Murder and had been for a few years at that point. The State then asked the officer whether there were any physical characteristics to look for in determining whether someone is in a gang. The officer answered: "Look at tattoos, their — who they associate with, any kind of writing. A lot of times in prisons, they'll write what their affiliation is on their clothing." The officer then confirmed that Allen had writing on his clothing that was consistent with him being a member of Sex-Money-Murder. Counsel did not request a curative instruction, and the trial court denied the motion for mistrial.

"Whether to declare a mistrial is in the discretion of the trial court and will not be disturbed on appeal unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *Rafi v.*

20

*State*, 289 Ga. 716, 720 (4) (715 SE2d 113) (2011). "A passing reference to a defendant's incarceration does not place his character in evidence." (Citation and punctuation omitted.) *Swims v. State*, 307 Ga. 651, 655 (2) (838 SE2d 751) (2020). Moreover, while it could be inferred from the officer's testimony that Allen previously was in prison, this was not stated directly. Under these circumstances, we conclude that the trial court acted within its discretion in denying the mistrial motion.[9] See id. at 654-655 (2) (trial court did not abuse its discretion in denying defendant's motion for mistrial based on witness testimony that defendant had been incarcerated in another state for an unstated crime).

(c) *Photographs.* Allen also argues that the trial court should have granted a mistrial based on the photographs showing him in prison. However, Allen only objected to their admission on Rule 403 grounds. Because he did not move for a mistrial at the time of their admission, this claim is not preserved for review. See *Goins v. State*, 310 Ga. 199, 206 (5) (850 SE2d 68) (2020).

*Judgment affirmed. Doyle, P. J., and Reese, J., concur*.

---

[9] "Failure to give an unrequested curative instruction does not create reversible error." (Citation and punctuation omitted.) *Swims v. State*, 307 Ga. 651, 655 (2) (838 SE2d 751) (2020).