307 Ga. 651
FINAL COPY

S19A1427.  SWIMS v. THE STATE.

BETHEL, Justice.

A Walker County jury found Jesse Lee Swims guilty of malice murder and other crimes in connection with the death of Deborah "Debbie" Leigh Clemenson.[1] Swims appeals, contending that the trial court erred in denying his motion for mistrial. For the reasons stated below, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the

---

[1] The crimes occurred on June 26, 1999. On October 5, 2004, Swims was indicted by a Walker County grand jury for: (1) malice murder; (2) felony murder; and (3) aggravated assault, each in connection with the death of Clemenson. At a jury trial held in December 2005, Swims was found guilty of all counts. Swims was sentenced to life imprisonment for malice murder. The trial court purported to merge Counts 2 and 3 with Count 1, but the felony murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Swims filed a motion for new trial through new counsel on December 20, 2005. A motion for new trial was also filed on Swims's behalf by his trial counsel on December 27, 2005. The trial court set a hearing for both motions and ordered both new counsel and trial counsel to appear. Swims's new counsel then amended his motion on October 24, 2017. After a hearing on November 1, 2017, the trial court denied the motion for new trial on November 7, 2017. Swims then filed a timely notice of appeal, and the case was docketed in this Court for the August 2019 term and submitted for a decision on the briefs.

evidence presented at trial showed that Clemenson was last seen on the evening of Saturday, June 26, 1999. Janet Clemenson, Clemenson's mother, testified that around 6:30 or 7:00 that evening, Clemenson helped her bring groceries into their house and put them away before returning outside to her friends. Janet last saw Clemenson as Clemenson was getting into a "darker older model car" with a "long front end." Janet tried to yell for Clemenson not to leave, but the car was already driving away by the time she got to the front door. Joseph Holt, Clemenson's next-door neighbor, testified that, on that same night, he also saw Clemenson crossing the street to get into an "early eighties two tone Thunderbird." Holt recognized the driver of the vehicle as Adam Hamrick, but could not identify the vehicle's passenger.

Hamrick testified that on the day Clemenson disappeared, he was with Swims and Swims's sister, Ruby, at Swims's parents' house. Hamrick testified that he argued with Ruby and that she left her parents' house. After Ruby left, Swims told Hamrick he had a cooler of beer and some marijuana and that Hamrick could spend

the day with him. Swims and Hamrick drove around town smoking marijuana and drinking beer in Hamrick's car, an older model, two-tone Thunderbird. After driving around for a while, Swims asked Hamrick to take him to a girl's house that Swims knew so he could try to "get me some," referring to sex. Hamrick and Swims drove to a pool hall that was across from Clemenson's house. Swims went inside the pool hall and returned to the car with Clemenson. Swims and Clemenson previously knew each other from watching the Super Bowl at another individual's house. Swims, Hamrick, and Clemenson then continued to ride around town while smoking and drinking.

Eventually, Swims suggested they drive up to John's Mountain. Once there, Swims directed Hamrick down a long dirt road until they reached a barricade. At the barricade, Hamrick stopped the vehicle, and Swims got back in the front passenger's seat. Swims told Hamrick that he had been in the back seat with Clemenson trying "to do things with her." Swims told Hamrick that Clemenson was too nervous to do anything while Hamrick was in

the car and that Swims was going to take Clemenson outside with him to "try to get some." Swims handed Hamrick some marijuana and told him to roll some joints to have ready when Swims returned.

After about 15 to 20 minutes, Swims returned to the vehicle without Clemenson. Swims had Clemenson's clothes balled up. Hamrick asked why Clemenson was not with Swims, and Swims responded that he took Clemenson in the woods and tried to "get some from [her]" and when she refused, Swims raped and killed her. Swims held a knife to Hamrick's throat and told him if he said anything, Swims would kill him or have him killed.

Swims told Hamrick to drive to the nearby Conasauga River so Swims could dispose of the clothes and the knife. As they approached the bridge over the river, other vehicles were around, so Swims told Hamrick to go down the road and turn around. On the way back over the bridge, Swims threw the clothes and knife out of the vehicle and into the river.

On July 17, 1999, military personnel located a partially decomposed body in a section of the Chattahoochee National Forest

4

within Walker County. The body was unclothed other than shoes and socks. The cause of death was determined to be "homicide or violence associated with a rectangular perforated injury of the sternum not otherwise specified." At first, the identity of the body was unknown. However, the shoes found on the body were consistent with a pair of shoes Clemenson had borrowed from a friend. Fiber testing revealed that fibers taken from the shoes matched fibers of the floorboard carpeting of Hamrick's vehicle. A DNA comparison between samples from the body and samples from Clemenson's toothbrush confirmed that the body was Clemenson's.

In August 1999, investigators approached Hamrick about the case while he was in West Virginia, where he, Swims, and Ruby had moved sometime after the events on John's Mountain.[2] After speaking with Hamrick, investigators located Swims in West

---

[2] Hamrick testified that when he was first questioned about Clemenson's disappearance, he was not truthful with the investigators because he was scared of Swims. However, Hamrick testified that he eventually told investigators the truth about the case in later interviews. Hamrick was charged with and pleaded guilty to giving a false statement and concealing the death of another in connection with Clemenson's case.

Virginia and spoke with Swims about the case. Investigators showed Swims the reward poster for the case, but Swims acted surprised and stated he did not know Clemenson.

Initially, Swims told investigators that he had been with Hamrick on only two occasions, one evening partying on John's Mountain, and then going swimming at Carters Lake together the next day. After further questioning, Swims told investigators there was another instance when he was with Hamrick. Swims stated that Hamrick had been in a fight with his girlfriend, Swims's sister Ruby, and that Hamrick and Swims went first to the house of Swims's boss to drink beer and smoke marijuana, then to Swims's cousin's house, and finally back to the house of Swims's boss. The investigator testified at trial that Swims's last story was similar to one of the stories Hamrick initially told the officers.

In 2005, while awaiting trial in the Walker County Jail for Clemenson's murder, Swims spoke to Chelsey Owens, another inmate in the jail, about attempting to escape incarceration. Owens testified that Swims wanted him to hold a corporal at the jail while

6

Swims stabbed the corporal a few times so that the staff at the jail would let them leave. Knowing Swims was charged with a girl's murder, Owens asked Swims if he killed that girl, to which Swims responded, "why do you think I want out of here so bad."

Although Swims has not challenged the sufficiency of the evidence, it is our customary practice to review the sufficiency of the evidence in murder cases, and we have done so here. After reviewing the record of Swims's trial, we conclude that the evidence presented against him was sufficient to authorize a rational jury to find beyond a reasonable doubt that Swims was guilty of malice murder. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979); see also *Brown v. State*, 302 Ga. 454, 456 (1) (b) (807 SE2d 369) (2017) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

2. In his only enumeration of error, Swims contends that the trial court erred in denying his motion for mistrial after his character was improperly placed into evidence during Chelsey

7

Owens's testimony. When the State asked Owens if Swims offered any reasoning for why he wanted to escape, Owens responded:

> I asked [Swims] why would he do that, I said, why would you want to do that, [Swims] said, he had told me because they did not honor his fast and speedy trial. He was looking at getting off on a technicality because they didn't honor that. He didn't have that for his defense. He said he was doing time, he had a lot of time in West Virginia that he wasn't never going to get out.

Swims's trial counsel immediately asked to approach the bench and moved for a mistrial. The trial court judge overruled Swims's objection and denied his motion. The State resumed its direct examination of Owens, who testified that Swims provided another possible motivation for attempting an escape — that Swims had murdered Clemenson: "I asked him, did y'all kill that child and he told me . . . why do you think I want out of here so bad."

"Generally, evidence of an independent offense committed by a defendant is inadmissible and irrelevant in a trial for a different crime, unless the evidence is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he has a criminal character." (Citation and

punctuation omitted.) *Rivera v. State*, 295 Ga. 380, 382 (2) (761 SE2d 30) (2014). See also former OCGA § 24-2-2.[3] Whether "to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *Hartsfield v. State*, 294 Ga. 883, 886 (2) (757 SE2d 90) (2014). Typically,

> a trial court's denial of a motion for mistrial based on the improper admission of bad character evidence is reviewed for abuse of discretion by examining factors and circumstances, including the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.

(Citation and punctuation omitted.) *Smith v. State*, 302 Ga. 699, 702 (3) (808 SE2d 692) (2017).

"[A] passing reference to a defendant's incarceration does not place his character in evidence." *Lewis v. State*, 287 Ga. 210, 212 (3) (695 SE2d 224) (2010). Furthermore, Owens's passing reference to Swims's incarceration in West Virginia for an unstated crime was

---

[3] Because Swims's trial occurred in 2005, Georgia's prior Evidence Code applied to his case.

an unexpected answer to the question asked by the prosecutor, who was attempting to establish that Clemenson's murder was the reason Swims "want[ed] out of [jail] so bad." See *Walker v. State*, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007) ("[A] nonresponsive answer that impacts negatively on a defendant's character does not improperly place his character in issue." (citation and punctuation omitted)). After Swims's mistrial was denied, the State did not inquire further into Swims's crimes in West Virginia beyond a single confirmation that his incarceration there also served as motive for escape.[4] The State then moved on to questions intended to elicit evidence of Swims's confession to Owens that he killed Clemenson. Therefore, the trial court did not abuse its discretion.

On appeal, Swims also argues that the trial court abused its discretion by not sua sponte issuing curative instructions to the jury in lieu of granting a mistrial. However, Swims did not request such instructions after the denial of his motion. "Failure to give an

---

[4] The parties' closing arguments are not a part of the record below, and Swims does not assert that the State referred to this evidence in closing arguments.

unrequested curative instruction does not create reversible error."

*Miller v. State*, 295 Ga. 769, 776 (3) (a) (764 SE2d 135) (2014).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 13, 2020.
Murder. Walker Superior Court. Before Judge Thompson.
*Jennifer E. Hildebrand*, for appellant.

11

*Herbert E. Franklin, Jr., District Attorney, Christopher A. Arnt, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.