310 Ga. 199
FINAL COPY

S20A0847. GOINS v. THE STATE.

NAHMIAS, Presiding Justice.

After a jury trial, Appellant Charmane Goins was convicted of malice murder in connection with the strangling death of Lauren Taylor, and the trial court summarily denied his motion for new trial. In a prior appeal, this Court held that the evidence presented at Appellant's trial was legally sufficient to support his murder conviction, but we otherwise vacated the trial court's order and remanded the case for the court to make factual findings and legal conclusions regarding Appellant's claim that his constitutional right to a speedy trial was violated; we did not address his other claims. See *Goins v. State*, 306 Ga. 55, 55 & n.1 (829 SE2d 89) (2019) (*Goins I*).

On remand, the trial court issued a detailed order rejecting the speedy trial claim and again denying Appellant's motion for new trial. He then filed this second appeal, raising his constitutional

speedy trial claim again along with claims that the State failed to preserve allegedly exculpatory evidence and that the trial court erred by admitting evidence from his cell phone, by denying his motion for a mistrial, and by excluding evidence about the victim. We see no reversible error, so we affirm.[1]

1. As we explained in upholding the sufficiency of the evidence supporting Appellant's murder conviction in *Goins I*:

> Viewed in the light most favorable to the verdict, the evidence at trial showed the following. Appellant, who was married and lived in Tunnel Hill in north[west] Georgia, began an affair with Taylor in 2013. In August 2014, Appellant told his friend Karl Wyatt that he wanted to end the affair but could not because Taylor was threatening to expose it to his wife and children. Taylor was last seen leaving her friend[ Dallas Regal's] house with Appellant around 1:30 p.m. on October 7, 2014; the next morning, her partially burnt body was found in Deshong Park in Gwinnett County. The cause of death was manual strangulation, after which her body had been doused in gasoline and set on fire.
>
> Appellant told investigators that he dropped off Taylor at a mall in Chattanooga, Tennessee on the afternoon of October 7 and then returned to Chattanooga

---

[1] The procedural history of this case is summarized in *Goins I*. See 306 Ga. at 55 n.1. After the trial court denied Appellant's motion for new trial again on remand in August 2019, he filed a timely notice of appeal, and the case was docketed to the April 2020 term of this Court and submitted for a decision on the briefs.

around 11:00 that night to help Wyatt with car trouble. Wyatt initially confirmed that alibi, but he later recanted and testified that he was not with Appellant that night and that Appellant had asked him to provide the false alibi. Appellant's cell phone records showed that, instead of going to Chattanooga that night as he had claimed, Appellant actually traveled south along I-75 around midnight, and then traveled east along I-285 toward Gwinnett County around 1:00 a.m. In addition, later on the day [Taylor's dead body was found], Appellant pawned a guitar that Taylor had stolen from an ex-boyfriend. Finally, Appellant's former cellmate testified that Appellant had confessed that he killed Taylor by strangling her with the seatbelt while she was sleeping and left her body at a "gang park" that Wyatt had told him about. Appellant testified at trial, giving a new version of his alibi story and claiming that Taylor gave him the stolen guitar as payment for gas.

*Goins I,* 306 Ga. at 55-56.

2. Appellant contends that his constitutional right to a speedy trial was violated. That claim, which Appellant raised in a pretrial motion to dismiss his indictment and again in his amended motion for new trial, requires the trial court to make findings of fact and conclusions of law under the two-part framework set forth in *Barker v. Wingo,* 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and refined in *Doggett v. United States*, 505 U.S. 647 (112 SCt 2686, 120 LE2d 520) (1992). See *Heard v. State*, 295 Ga. 559, 562 (761 SE2d

3

314) (2014). The first part of the framework requires the court to determine whether the length of time between Appellant's arrest and his trial was presumptively prejudicial. See id. If it was, the trial court is required under the second part of the framework to apply a four-factor balancing test that examines the length of the delay, the reasons for it, Appellant's assertion of his right to a speedy trial, and whether he suffered prejudice as a result of the delay. See id.

In its brief oral ruling denying Appellant's pretrial motion to dismiss and in its July 2018 order summarily denying his motion for new trial, the trial court failed to make the necessary findings of fact and conclusions of law under the *Barker-Doggett* framework. Accordingly, in the first appeal of this case, we vacated the trial court's judgment in part and remanded the case for the entry of an order containing appropriate findings and conclusions regarding the speedy trial claim. See *Goins I*, 306 Ga. at 58.

In its ten-page order on remand, the trial court correctly determined that the thirty-two-month delay between Appellant's arrest and trial was presumptively prejudicial. The court then made

4

detailed factual findings and legal conclusions regarding each of the *Barker-Doggett* factors, and after balancing the factors, the court ultimately rejected Appellant's speedy trial claim. We have carefully reviewed the trial court's order, the record, and the parties' briefs, and we conclude that the trial court did not abuse its broad discretion by determining that Appellant's constitutional right to a speedy trial was not violated. See, e.g., *Heard*, 295 Ga. at 563 (explaining that when this Court reviews a speedy trial claim, "[w]e must accept the [trial] court's findings of fact if the record contains any evidence to support them, and we will defer to the court's 'ultimate conclusion . . . unless it amounts to an abuse of discretion'" (citation omitted)); *State v. Buckner*, 292 Ga. 390, 393 (738 SE2d 65) (2013) (explaining that the weighing of the *Barker-Doggett* factors "is committed to the substantial discretion of the trial court, and 'its ultimate judgment is reviewed on appeal only for an abuse of that discretion'" (citation omitted)).[2]

---

[2] As Appellant points out in his brief, the record does not support the trial court's factual findings that the parties consented to a continuance in July

3. During the trial, the lead detective on Appellant's case testified that near the beginning of his investigation, he focused on Taylor's friend Regal as a suspect, because the detective "noticed quite a few indicators of deception" when he first questioned Regal about the days before Taylor's death. The detective explained that after he told Regal about Taylor's murder, however, Regal appeared less nervous and more honest, and the detective believed that Regal had initially been deceptive because he had assumed he was being interviewed about some stolen property that Taylor had given him. Regal showed the detective some gasoline-soaked clothing in Regal's house, and the detective observed some scratches on Regal's hands and arms. The detective testified that Regal explained that the clothing and injuries were related to his work as a stone mason. The detective did not collect the clothing or further investigate the

2015 and that Appellant's trial counsel requested a continuance in October 2015. Given the other continuances requested by Appellant and the court's other findings regarding the reasons for delays in the case and regarding the other *Barker-Doggett* factors, which the record supports, it is clear that those two erroneous findings were not material to the court's ultimate conclusion. See, e.g., *Dillard v. State*, 297 Ga. 756, 762-763 (778 SE2d 184) (2015).

6

injuries.[3]

Relying on *California v. Trombetta*, 467 U.S. 479 (104 SCt 2528, 81 LE2d 413) (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (109 SCt 333, 102 LE2d 281) (1988), Appellant contends that the State deprived him of due process by failing to preserve Regal's clothing or better document his injuries. He argues that because Taylor was manually strangled and her body was burned with gasoline, the detective ignored the obvious exculpatory value of the gas-soaked clothing and scratches, and that if the clothing had been collected, Appellant could have conducted DNA or other testing on it, the results of which might have exonerated him.

In evaluating whether a defendant's constitutional right to due process was violated when the State failed to preserve evidence that could be exculpatory,

> a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. . . . *Youngblood*, 488 U.S.

---

[3] Regal testified that Taylor had brought to his house some property, including a guitar, that she had taken from her ex-boyfriend and planned to pawn. He also testified that he often got scratches on his hands and arms from his work as a stone mason.

> 51 . . . . To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. . . . *Trombetta*, 467 U.S. 479. . . .

*Krause v. State*, 286 Ga. 745, 752 (691 SE2d 211) (2010) (citation and punctuation omitted). See also *State v. Mussman*, 289 Ga. 586, 590 (713 SE2d 822) (2011) (applying this test where the State failed to preserve evidence that "*could* have been exculpatory, but where it is not known that the evidence *would* have been exculpatory") (emphasis in original).

This test is ordinarily applied when State officials dispose of potential evidence that was previously in the State's actual or constructive possession. See, e.g., *Youngblood*, 488 U.S. at 52-53 (sexual assault kit not fully tested and victim's clothing not refrigerated); *Trombetta*, 467 U.S. at 482 (suspected drunk drivers' breath samples not preserved by arresting officers); *Hill v. State*, 308 Ga. 638, 648-649 (842 SE2d 853) (2020) (correctional officer's video of post-crime search lost); *Clay v. State*, 290 Ga. 822, 839-840, 841-

8

843 (725 SE2d 260) (2012) (blood samples taken from defendant destroyed); *Mussman*, 289 Ga. at 587, 590 (defendant's impounded car released). Cf. *Krause*, 286 Ga. at 752 (applying the test to a bat seen in a crime scene photograph but not taken into evidence). That is different from the situation presented here, where a detective did not try to collect or further document certain potential evidence in the first place — evidence that might have required Regal's consent or a search warrant to obtain — and no State actor then had anything to do with the disposition of that potential evidence. Cf. *Youngblood*, 488 U.S. at 59 (disagreeing "strongly" with the claim that "the Due Process Clause is violated when the police fail to use a particular investigatory tool" and explaining that "the police do not have a constitutional duty to perform any particular tests").

But we need not decide whether Appellant's claim invokes the test to determine a due process violation based on the State's failure to preserve evidence. Even if we assume it does, and even if we also assume that he could establish under the first part of the test that the evidence was constitutionally material (and even if we assume

further that this claim was timely and properly raised in the trial court), the claim fails, because he has not shown that the detective acted in bad faith. Indeed, the record provides no support for such a finding, and Appellant made no allegation in the trial court that the detective acted in bad faith.[4] Although the detective initially considered Regal a suspect, he believed that Regal was truthful after learning the actual reason for the investigation, and he credited Regal's explanation for the clothing and injuries. Moreover, the detective testified that at that point in the investigation, he had not yet contacted Appellant for an interview and did not "really think [Appellant] was a suspect." Thus, Appellant cannot establish that the State violated his right to due process. See *Krause*, 286 Ga. at 752 ("[The appellant] did not even argue bad faith failure to preserve the bat evidence at trial, much less produce any evidence of bad faith on the part of the State. Accordingly, [his] due process rights were not violated."). See also *Hill*, 308 Ga. at 649 (explaining that "'even

---

[4] Appellant also made no claim of bad faith in this Court until his reply brief, where he simply and circularly asserts that because the detective failed to collect the potential evidence, the detective acted in bad faith.

10

if we were to assume that the State's handling of the [potential evidence] indicated careless, shoddy[,] and unprofessional investigatory procedures, it did not indicate that the police in bad faith attempted to deny [the appellant] access to evidence that they knew would be exculpatory'" (citation omitted)).

4. Appellant contends next that the trial court erred by failing to suppress evidence obtained from his cell phone. Appellant's pretrial counsel filed a motion to suppress the evidence, arguing that the lead detective seized Appellant's phone from him during an interview about two weeks after Taylor's murder, without a warrant and under no applicable exception to the warrant requirement, thereby violating the Fourth Amendment to the United States Constitution. The trial court held a hearing on the motion but did not issue a ruling at the hearing or in an order, and Appellant's trial counsel did not request a ruling or object when the cell phone evidence was admitted during the trial. We therefore review Appellant's claim only for plain error. See OCGA § 24-1-103 (a), (d); *Lofton v. State*, 309 Ga. 349, 358-359 (846 SE2d 57) (2020). To

11

prevail on this claim, Appellant must demonstrate that the trial court committed an error that was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of his trial, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *Lofton*, supra.

Pretermitting whether the trial court committed an obvious error by failing to suppress the cell phone evidence, Appellant cannot show that any such error likely affected the outcome of his trial, and indeed he makes no effort to do so in his briefs here. During the trial, the lead detective testified that the downloaded content of Appellant's cell phone showed that Taylor's phone number, which was saved in Appellant's phone under the name "Mr. Davis," had been deleted at some unknown time. The investigator who downloaded the content of the cell phone testified that some text messages and time-and-date entries for phone calls between Appellant's phone and Taylor's phone had also been deleted at an unknown time. The investigator's report, which was admitted into evidence, showed that Appellant's phone and Taylor's phone

exchanged 24 text messages mostly in June and September 2014, all of which had been deleted, and 33 calls in September and October 2014; the entries for three calls on October 6 and two on October 7, the day Taylor was last seen alive, had been deleted.

The evidence that Appellant saved Taylor's phone number under a false name and that he deleted her number, their text messages, and some of their call entries at some unknown time was not especially incriminating, given that Appellant admitted to the police and at trial that he had an extramarital affair with Taylor. And although the report showed and the investigator briefly testified that two of the deleted call entries were from the day Taylor was last seen alive, indicating that the calls had been deleted that day or sometime after Taylor's death, that evidence was not mentioned again during the trial.

On the other hand, the State presented strong evidence of Appellant's guilt that is unchallenged here, including evidence that he told Wyatt that he wanted to end the affair with Taylor but could not because of her threats to expose it; that he was the last person

13

to see her alive; and that he then lied repeatedly to investigators about being in Chattanooga with Wyatt around the time of the murder and asked Wyatt to corroborate that alibi, which Wyatt initially did before admitting and testifying that the alibi was false. When Appellant's cell phone location information showed that his phone was not in Chattanooga as he had claimed but instead traveled toward the area where Taylor's dead body was discovered,[5] Appellant claimed that the location data was incorrect, and then at trial he changed his story to claim that he had driven Wyatt to Atlanta to pick up some money from a friend, a claim that Wyatt also denied. In addition, on the day Taylor's dead body was found, Appellant pawned a guitar that she had stolen from an ex-boyfriend, and while awaiting trial, Appellant confessed to his cellmate that he strangled Taylor and left her body at a park.

---

[5] Notably, the cell phone *location* evidence was not derived from the downloaded content of Appellant's phone but rather from the AT&T billing records for his wife's account, which were admitted into evidence without objection. Those billing records also showed the dates and times of calls between Appellant's phone and Taylor's phone. The State also introduced, again without objection, a voicemail from Appellant and dozens of text messages between Appellant's cell phone and Taylor's cell phone, which were obtained from Taylor's phone records.

Given the other, compelling evidence of Appellant's guilt in comparison to the weakly incriminating evidence derived from his cell phone, he has not shown that any error in the admission of the cell phone evidence likely affected the outcome of his trial. He has therefore failed to show plain error. See, e.g., *Thompson v. State*, 304 Ga. 146, 153 (816 SE2d 646) (2018) (concluding that the appellant had not shown that the challenged testimony probably affected the outcome of his trial under the third part of the plain error test, because the testimony was not particularly prejudicial and the other evidence of his guilt was compelling). See also *Wallace v. State*, 309 Ga. 823, 825-826 (848 SE2d 72) (2020) (holding that the appellant failed to show that he was prejudiced when the challenged evidence was "not . . . especially incriminating" and the other evidence of his guilt was "strong").[6]

---

[6] To the extent Appellant argues that his trial counsel provided ineffective assistance by failing to obtain a ruling on the motion to suppress the cell phone evidence, Appellant did not raise that claim in his motion for new trial, in the amended motion, or at the hearing on the motion, and the trial court did not rule on it, so he has not preserved the claim for review on appeal. See *Robinson v. State*, 306 Ga. 614, 616 (832 SE2d 411) (2019). And even if the

5. During direct examination of the lead detective, the State introduced into evidence a video recording of one of Appellant's interviews with the police. Outside the presence of the jury, the prosecutor explained that he had redacted from the recording any discussion of Appellant's prior conviction. The prosecutor then played the video recording for the jury. Near the end of the approximately hour-long recording, one of the interviewing investigators told Appellant that they were obtaining a search warrant for his DNA. Appellant said, "When I left prison, they already took my DNA. So you should have records of my DNA. That might help you." About four minutes later, during a phone call to his wife while he was left alone in the interview room, Appellant said, "Like I told them, you already got my DNA. They took my DNA before I left prison."

After playing the recording, the prosecutor continued his direct

---

claim had been preserved, Appellant cannot show that the alleged deficiency of trial counsel caused him prejudice. See *Roberts v. State*, 305 Ga. 257, 265 (824 SE2d 326) (2019) (explaining that "the test for prejudice in the ineffective assistance analysis is equivalent to the test for harm in plain error review" (citation and punctuation omitted)).

16

examination of the detective. The trial court then released the jury for a lunch break, and Appellant's counsel moved for a mistrial on the ground that the recording mentioned Appellant's prior incarceration. The court denied the motion but offered to give the jury a curative instruction. The discussion then moved on to another topic, and Appellant's counsel never requested the instruction.

Appellant now claims that the trial court abused its discretion by denying the mistrial motion because the references to his incarceration constituted improper character evidence. This claim, however, is not preserved for review because Appellant failed to "make a contemporaneous motion for a mistrial at the time [he] became aware of the matter giving rise to the motion." *Coley v. State*, 305 Ga. 658, 661 (827 SE2d 241) (2019) (citation and punctuation omitted). See also *Kilpatrick v. State,* 308 Ga. 194, 199-200 (839 SE2d 551) (2020).

But even if Appellant had properly preserved this issue, the trial court did not abuse its discretion by denying the mistrial motion. "Whether to grant a mistrial is within the discretion of the

17

trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." *Swims v. State*, 307 Ga. 651, 654-655 (838 SE2d 751) (2020) (citation and punctuation omitted). The two comments about Appellant having been in prison were brief and nonspecific, and such "'passing reference[s] to [his] incarceration [did] not place his character in evidence.'" Id. at 655 (citation omitted). Moreover, after Appellant's counsel moved for a mistrial, the trial court proposed the remedy of a curative instruction, but counsel did not accept the court's offer. See id. ("'Failure to give an unrequested curative instruction does not create reversible error.'" (citation omitted)). Accordingly, the trial court acted within its discretion in denying the mistrial motion. See, e.g., id. (concluding that the trial court did not abuse its discretion by denying the defendant's mistrial motion after a witness briefly referenced the defendant's "incarceration in West Virginia for an unstated crime"); *Lewis v. State*, 287 Ga. 210, 212-213 (695 SE2d 224) (2010) (holding that even if the prosecutor's questions at trial referenced the defendant's incarceration, the trial

court did not abuse its discretion by denying his motion for a mistrial).[7]

6. Finally, Appellant contends that the trial court abused its discretion by excluding evidence about Taylor that he asserts would have supported his defense theory that other people had a motive to kill her. We disagree.

Appellant's pretrial counsel filed a motion to introduce "character evidence" about Taylor, including her prostitution- and drug-related convictions and posts from her Facebook page. At the hearing on the motion, counsel argued that Taylor's convictions and Facebook posts showed that she solicited customers for sex and drugs and that the posts also showed that she had conflicts with people other than Appellant. Counsel asserted that this evidence showed "the various suspects in this case, all the people [Taylor] came in contact with," and was relevant to prove that other people could have had a motive to kill her. The trial court denied the

---

[7] Although Appellant baldly asserts in his principal brief here that the references to his incarceration caused him to decide that it was necessary to testify, nothing in the record supports that assertion.

19

motion.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. According to OCGA § 24-4-402, "[a]ll relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules. . . . Evidence which is not relevant shall not be admissible." OCGA § 24-4-403 allows for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Appellant has not shown how the evidence of Taylor's convictions and Facebook posts met these basic requirements of admissibility.

> This Court has followed the general rule that, before [evidence] can be introduced that another person committed the charged crime, the proffered evidence

20

must raise a reasonable inference of the defendant's innocence and, in the absence of a showing that the other person recently committed a crime of the same or similar nature, must directly connect the other person with the corpus delicti.

*Roberts v. State*, 305 Ga. 257, 260 (824 SE2d 326) (2019) (citation and punctuation omitted). The proffered evidence showing that Taylor had been convicted of prostitution and drug crimes and that unknown individuals contacted her to obtain sex or drugs or had some sort of conflict with her during the weeks and months before her death would have done nothing to establish that someone other than Appellant killed her, because none of the proffered evidence linked any other individual to the murder.[8] Thus, the convictions and Facebook posts would not have raised a reasonable inference that Appellant was innocent or directly connected anyone else to Taylor's murder, and "the trial court was not required to allow

---

[8] Appellant argues in particular that one of Taylor's Facebook posts saying, "DAT WHITE MAN THOUGHT he won . . . nope . . . I always come out on top," showed that Taylor had conflict with her ex-boyfriend or Regal, who are both white. But Appellant has not shown that this post referred to either of those men or that it somehow connected them to Taylor's murder. Moreover, the ex-boyfriend and Regal testified at trial, and Appellant's counsel thoroughly cross-examined them about conflicts in their relationships with Taylor.

Appellant to introduce evidence 'based purely on rumor, speculation, and conjecture.'" *Moss v. State*, 298 Ga. 613, 616 (783 SE2d 652) (2016) (citation omitted) (concluding that the trial court did not abuse its discretion by excluding evidence of a prior shooting of the murder victim that the defendant offered to show there were other potential suspects in the murder). See also *Roberts*, 305 Ga. at 261-262 (holding that the trial court did not abuse its discretion by excluding evidence that the murder victim pulled a gun on another individual about a week before the murder, because the evidence "offered nothing more than speculation and conjecture that a third person could have been involved in [the victim's] murder").

Moreover, Appellant has not shown that the form of the proffered evidence was proper under OCGA § 24-4-405 (a).[9] Because that rule generally limits "[c]haracter evidence about a victim . . . to reputation or opinion, not specific bad acts," the convictions and

---

[9] OCGA § 24-4-405 (a) says, "In all proceedings in which evidence of character or a trait of character of a person is admissible [other than as an essential element of a charge, claim, or defense or when an accused testifies to his own character], proof shall be made by testimony as to reputation or by testimony in the form of an opinion."

Facebooks posts showing Taylor's acts of prostitution, drug-dealing, and quarreling with individuals on social media were not admissible. *Wofford v. State*, 305 Ga. 694, 698 (827 SE2d 652) (2019) (citation and punctuation omitted). Thus, the trial court did not abuse its discretion by excluding the proffered evidence.

*Judgment affirmed. All the Justices concur, except Warren, J., not participating and Bethel, J., disqualified.*

Decided October 19, 2020.

Murder. Gwinnett Superior Court. Before Judge Turner, Senior Judge.
*Richard C. Armond*, for appellant.
*Daniel J. Porter, District Attorney, Lee F. Tittsworth, Daryl E. Manns, Daniel Sanmiguel, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.