**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J. and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 29, 2024**

# In the Court of Appeals of Georgia

A23A1444. THE STATE v. GUNSBY.

A23A1445. GUNSBY v. THE STATE.

DOYLE, Presiding Judge.

Christopher Gunsby stands accused of committing rape, aggravated sodomy, and kidnapping as to one victim (Counts 1, 2, and 3), and rape, aggravated assault, and robbery as to a second victim (Counts 4, 5, and 6). In Case No. A23A1444, the State appeals from the grant of Gunsby's motion to suppress evidence obtained based on real-time GPS and cell-site location information ("CSLI") provided by T-Mobile pursuant to an exigent circumstances request ("ECR") made to T-Mobile by police. The State contends that the trial court erred (1) by reviewing police's ECR under an

improper legal standard, (2) by improperly applying *Franks v. Delaware*[1] (which analyzes officers' truthfulness in a warrant application) in the ECR context, and (3) by applying the exclusionary rule despite a lack of bad faith on the part of T-Mobile. Discerning no reversible error, we affirm the grant of the motion to suppress the evidence derived from the information provided by T-Mobile pursuant to the ECR.

In Case No. A23A1445, Gunsby cross-appeals from an order denying his motion to dismiss Counts 4, 5, and 6 based on the State's failure to preserve allegedly exculpatory evidence (Gunsby's vehicle) that was seized pursuant to a warrant to search his residence. We affirm the trial court's ruling in that case also.

### Case No. A23A1444

When reviewing the grant or denial of a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment. An appellate court also generally must limit its consideration of the disputed facts to

---

[1] 438 U. S. 154, 156 (98 SCt 2674, 57 LE2d 667) (1978) (holding that if a defendant establishes that police lied or recklessly disregarded the truth in an affidavit supporting a warrant application, and "the affidavit's remaining [non-false] content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit").

those expressly found by the trial court. We review the trial court's decision on a motion to suppress for abuse of discretion.[2]

So viewed, the record from the hearing on Gunsby's suppression motion shows that in the early morning hours on June 17, 2017, Detective Katrina Evans was on call with the Special Victims Unit when she was asked to report to a hospital to interview a rape victim. The victim, K. S., stated that earlier that evening she had called a number for a "cash taxi" given to her by a friend, and she had been raped by the driver. K. S. described the driver's complexion, build, and hairstyle, and she noted that he had a mole on his face. She explained that shortly after picking her up in a black SUV, the driver pulled over and raped her in the front seat. During the attack, K. S. was able to jump out of the passenger door and flee the scene as the driver drove away. K. S. sought help from someone nearby and was driven to the hospital; during that ride, K. S. spotted the black SUV and got a partial license plate number: RCD 55. K. S. had left her cell phone in the SUV, but police were able to obtain the cell phone

---

[2] (Punctuation and citations omitted.) *Bunde v. State*, 368 Ga. App. 392 (888 SE2d 617) (2023), quoting *Caffee v. State*, 303 Ga. 557 (814 SE2d 386) (2018) (citations and punctuation omitted), *Peacock v. State*, 314 Ga. 709, 715 (3) (878 SE2d 247) (2022).

number that she called for the cash taxi a day or two later from the person who gave it to K. S.

In the early morning hours of the next day, June 18, 2017, Evans received another call regarding another sexual assault against a different victim, K. H. The victim reported that she had left a night club and was looking for a ride home when she was approached in the parking lot by a man later determined to be Gunsby, who offered her a ride home in his black SUV. The victim accepted the ride, and when Gunsby ignored her directions and instead violently forced her to give him oral sex, she jumped out of the moving SUV.

Based on these reports, Evans spoke with an internal Crime Analysis Division, which estimated that another assault would occur within 24 hours based on the facts she gave them. Evans used this information to fill out an ECR to T-Mobile for the phone number K. S. had called, seeking the subscriber identity and call and location data for the last 48 hours. The ECR stated, in relevant part: "The person with this phone number is the suspect in two serial rapes this past Friday and Saturday nights. The analysis predicts that he will rape again tonight. Suspect used Craigslist to lure victims. The number called from the target reveals that the victims were in

4

communication with the suspect hours prior to the assault." Based on the ECR, T-Mobile provided police with location data showing the phone's location over the past 48 hours and associating it with a residential address.

Police monitored the residence and observed a black SUV parked in the front yard. During the ensuing day or two, police obtained a warrant to search the residence. Police executed the search warrant and encountered Gunsby and his wife living there; during the search Gunsby gave police a cell phone that he said was his, and police separately found another phone in a closet after it rang when police called the number K. S. had used. Police also found K. S.'s phone in a bag in the attic of the house. After the search, police arrested Gunsby, and he was charged with multiple offenses against the two victims.

Gunsby moved to suppress the evidence derived from the location information given to police by T-Mobile pursuant to the ECR, which included the evidence obtained in the search of his residence. He also moved to dismiss Counts 4, 5, and 6 of the indictment relating to the alleged rape in his SUV because, despite his explicit request, police had failed to preserve his vehicle[3] while it was impounded, so he was

---

[3] During the impoundment, the vehicle was apparently vandalized or otherwise damaged.

unable to have an expert examine it for exculpatory forensic evidence. Following an evidentiary hearing at which Detective Evans testified, the trial court granted Gunsby's motion to suppress, based in part on the lack of credibility of Evans's testimony, excluding the cell phone location data provided by T-Mobile and the items discovered in the subsequent search of Gunsby's residence. After a separate hearing, the trial court denied Gunsby's motion to dismiss. These appeals followed.

*Case No. A23A1444*

1. In this case, the State appeals the order granting Gunsby's motion to suppress, arguing first that the trial court erred by failing to review the totality of the circumstances from the perspective of a reasonable officer involved in the investigation. Based on the record before us, we disagree.

We begin with the legal background. As a general matter, under 18 USC § 2702 (a) (3), cell service providers generally are prohibited from "knowingly divulg[ing] a record or other information [such as CSLI] pertaining to a subscriber to or customer of such service."[4] But there is an exception under subsection (c) (4), which permits

---

[4] For background on the type of data available from cell service providers, see *Lofton v. State*, 310 Ga. 770, 775, n.3 (854 SE2d 690) (2021), overruled on other grounds by *Outlaw v. State*, 311 Ga. 396, 401, n.5 (858 SE2d 63) (2021).

(but does not require) service providers to disclose such information "to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency."

Under this procedure, until 2018, police had an avenue to obtain CSLI without a warrant because under "then-existing constitutional doctrine, a person generally lacked a reasonable expectation of privacy in business records owned and maintained by a third-party business" such as cell service providers.[5] Then, in 2018, the United States Supreme Court held in *Carpenter v. United States*[6] that accessing seven days of "cell-site records was a search within the meaning of the Fourth Amendment,"[7] so "the [State] must generally obtain a warrant supported by probable cause before acquiring such records."[8]

---

[5] *Lofton*, 310 Ga. at 776-777 (2). See also *Ross v. State*, 296 Ga. 636, 639 (2) (769 SE2d 43) (2015) ("[D]efendants . . . generally lack standing to challenge the release of such records under the Fourth Amendment because they do not have a reasonable expectation of privacy in records belonging to someone else.") (punctuation omitted).

[6] 585 U. S. ___ (138 SCt 2206, 201 LE2d 507) (2018).

[7] Id. at ___ (III) (B).

[8] Id. at ___ (IV). See also *Swinson* v. State, 311 Ga. 48, 53 (2) (a) (855 SE2d 629) (2021) ("a search warrant is generally required to obtain such information from a

The police conduct at issue in this case occurred in 2017, before *Carpenter* was decided and during a time in which "binding appellate precedent . . . did not recognize any reasonable expectation of privacy in non-content cell phone records contained in the business records of a third party and did not differentiate between historical CSLI and other types of non-content cell phone records."[9] In such circumstances, Georgia courts have held that the exclusionary rule does not apply because it is a remedy for police misconduct: "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, then suppression fails to yield appreciable deterrence."[10]

Based on this, the State argues that the evidence derived from the ECR should not be suppressed, in light of the undisputed evidence that two victims were sexually assaulted by a person driving a black SUV within a day of each other. But this elides the fact that the trial court found much, if not all, of the material testimony supporting

third-party telephone carrier"), overruled on other grounds by *Outlaw*, 311 Ga. at 401, n. 5.

[9] *Lofton*, 310 Ga. at 783 (2). See generally *Registe v. State*, 292 Ga. 154, 156 (734 SE2d 19) (2012), overruled by *Carpenter*, 585 U. S. at ____ (III) (A) (138 SCt at 2218-2219 (III) (A)).

[10] (Punctuation omitted.) *Lofton*, 310 Ga. at 782 (2).

the ECR not to be credible or exaggerating the exigency when submitting the ECR to T-Mobile. This is important because, on a motion to suppress, we defer to the trial court's credibility determinations: "[T]he trial court sits as the finder of fact in adjudicating a motion to suppress, and it is the trial court's responsibility to determine the credibility of a witness'[s] testimony. . . ."[11] Further, "a trial court is not obligated to believe an officer's testimony even if the testimony is uncontradicted, and it may accept or reject any portion of the testimony."[12]

The trial court expressly found that each of the four statements in the ECR contained misrepresentations: one victim reported a sexual assault instead of a "rape"; the prediction that the suspect would "rape again tonight" was speculative and unsupported by a credible analysis; the suspect was not using "Craigslist" to lure victims, instead meeting one in a nightclub parking lot; and the victims were not both in contact with the suspect hours before the assaults (again, one victim first made contact with the suspect in person before accepting a ride from him — no phone contact was involved). Of particular relevance, the trial court noted that the "Crime

---

[11] *State v. Bly*, 367 Ga. App. 786, 790 (1) (a) (888 SE2d 593) (2023).

[12] Id., citing *Hughes v. State*, 296 Ga. 744, 747 (1) (770 SE2d 636) (2015), quoting *Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994).

Analysis Division" that predicted another likely rape that night was only identified as a single person, whose first name Evans could not recall, and Evans, who had never relied on the division before, could provide no information regarding methodology, qualifications, expertise, or track record of such a group. Based on Evans's demeanor and vague testimony, the trial court "discredit[ed] [Detective] Evans'[s] testimony entirely and [found] that the inaccurate statements she made in the [ECR] were done to induce T-Mobile to voluntarily disclose protected information so as to avoid having to go through the search warrant process." Thus, the facts as found by the trial court did not support the pattern of conduct asserted by Evans in the ECR — nightly rapes of victims lured by cell phone contact initiated over Craigslist — that warranted the prediction that "he will rape again tonight." This unsubstantiated conclusion was the basis for the exigency and undermined the entire ECR procedure.

Based on the misrepresentations in the ECR, the trial court found that police were not acting in good faith when they requested Gunsby's CSLI data. While Evans ordinarily could have used the ECR procedure lawfully to obtain the CSLI data at the time, the trial court found that her conduct in this case does not demonstrate "an

10

objectively reasonable good-faith belief that [her] conduct [was] lawful."[13] The good-faith exception to the exclusionary rule applies when an officer "act[s] as a reasonable officer would and should act under the circumstance[ ],"[14] which is not the case here.

Even so, the State argues that the exclusionary rule should still not apply because the known circumstances, when viewed objectively, warranted the ECR request and T-Mobile's disclosure. But this does not change our analysis because even if true, (1) it undermines the requirement that T-Mobile act in good faith (because good faith is premised on accurate data), and (2) it would reward police officers who lie to avoid procedural safeguards and later "get lucky" after the fact.[15] T-Mobile's

---

[13] *Davis v. United States*, 564 U. S. 229, 238 (II) (131 SCt 2419, 180 LE2d 285) (2011).

[14] (Punctuation omitted.) Id. at 241 (III).

[15] Cf. *State v. Thurston*, 368 Ga. App. 667, 672 (888 SE2d 362) (2023) ("[T]he 2022 warrant was obtained by the State 'solely as an attempt to overcome the [c]onstitutional violation which occurred in 2020,' and 'the State's course of action [is] unreasonable . . . [and] worthy of deterrence.'"). We note that the State does not argue that the inevitable discovery rule should apply. See *Mobley v. State*, 307 Ga. 59, 76-77 (4) (b) (834 SE2d 785) (2019) (holding that, even assuming that probable cause existed to obtain a warrant, the inevitable discovery rule did not apply because police were not actively in the process of obtaining a lawful warrant at the time of the search). See also *State v. Wood*, 367 Ga. App. 10, 14 (3) (884 SE2d 596) (2023) ("Absent proof that the officers were actively pursuing a warrant when they entered and searched [defendant's] hotel room, the mere fact that drug task force agents

disclosure was necessarily based on the purported exigency of the circumstances, and based on the trial court's factual findings, the police's misrepresentations that exaggerated the exigency warranted the application of the exclusionary rule in this case.

2. The State next contends that the trial court erred by improperly applying *Franks v. Delaware*[16] in the ECR context. *Franks* addressed a criminal defendant's right to challenge the truthfulness of information submitted by police in an application for a search warrant (as opposed to an ECR to a cell service provider). *Franks* held that if a defendant can show that police intentionally lied or recklessly disregarded the truth in a warrant application, and if the remaining true information in the warrant application does not support a finding of probable cause, the search warrant is void, and the fruits therefrom must be excluded.[17] The trial court invoked this principle and held that "after considering the remaining facts contained in the ECR without [the

---

actually obtained a warrant later that day is not enough to bring this case within the inevitable discovery exception.") (citation and punctuation omitted), quoting *Mobley*, 307 Ga. at 76-77 (4) (b).

[16] 438 U. S. at 154.

[17] See id. at 155-156.

assertion that the suspect was likely to rape again tonight], there is not enough information to support a finding of exigency to justify getting the CSLI without having first obtained a search warrant."

The State essentially argues that the ECR should be viewed independently of Evans's misrepresentations, including the "subjective" assertion that "the suspect will rape again tonight," which would justify the release of the CSLI regardless of Evans's credibility. But this argument ignores the fact that the ECR request to T-Mobile turned on exigency, not the weight of the evidence against Gunsby. It is logical to conclude that the person with the number called by K. S. was likely the perpetrator (or someone connected to the perpetrator), and this would support a warrant to obtain the CSLI. But the statutory request to T-Mobile was based on *the alleged exigency*, which the trial court held was only demonstrated by the embellishments provided by Evans. The statement that the suspect "will rape again tonight" was not a mere subjective description,[18] it was presented to T-Mobile as the result of police analysis

---

[18] Compare *State v. Britton*, 316 Ga. 283, 288-289 (2) (888 SE2d 157) (2023) (addressing alleged falsehoods in a warrant application and holding that the characterization of a certain phone having "extensive communication" with another number was a subjective description and not a falsehood under *Franks* in light of the actual number of contacts also provided in the search warrant application).

justifying the exigency to avoid obtaining a warrant. Therefore, the record supports the trial court's factual findings and its conclusions as to their import, and in light of the finding of bad faith by the trial court, we discern no basis for reversal based on its reliance in part on *Franks*.

3. The State next argues that because T-Mobile acted in good faith, the trial court should not have suppressed the evidence from the ECR. But as held in Division 1, the record supports the trial court's finding as to the lack of good faith on the part of the police in making the ECR. Thus, the basis for suppression was not T-Mobile's bad faith, and any argument relying on its conduct is misplaced.

*Case No. A23A1445*

In this case, Gunsby cross-appeals the denial of his motion to dismiss Counts 4, 5, and 6 of the indictment. These counts were alleged to have been committed against K. S., and according to Gunsby, his defense involved potentially exculpatory forensic evidence that could have been gathered from the back seat of his vehicle after it was stored in an impound lot. Based on this, in August 2017, Gunsby filed a motion to preserve the impounded vehicle so an expert could search for and attempt to gather DNA or other biological evidence showing that sex acts with K. S. consensually

14

occurred in the back seat (as opposed to forcibly in the front seat as alleged by K. S.). Thereafter, in November 2017, Gunsby filed an ex parte motion to inspect the vehicle, which motion was granted ex parte and an order entered under seal in December 2017. The following month, counsel appeared at the impound location with Gunsby's expert, but after consultation with police, Gunsby's expert was not allowed to inspect the vehicle. After a second order was obtained and consented to by the State in June 2019, Gunsby's expert was allowed to inspect the vehicle in July 2019. By then, Gunsby's vehicle had been vandalized; its rear window was broken, and foreign objects were found in the vehicle.

Based on the State's failure to preserve the evidence in his vehicle, Gunsby moved to dismiss counts 4, 5, and 6 of the indictment, which accused him of the rape of K. S. allegedly occurring in the front seat of his vehicle. The trial court held that the existence of any exculpatory biological evidence was speculative, and even if proven, it would only go to the location (front seat/back seat) of the interaction between Gunsby and K. S. and would not necessarily exonerate Gunsby. According to the trial court's ruling, both of these factors demonstrated that the evidence was not readily apparent to police, and thus, its preservation was not constitutionally material.

Further, the trial court held that even if the evidence was constitutionally material (in light of Gunsby's request), police did not demonstrate bad faith by storing his vehicle in the impound lot.

Gunsby now appeals, arguing that the trial court erred by not dismissing the relevant counts because the State's destruction of evidence constituted a due process violation. We disagree.

> In evaluating whether a defendant's constitutional right to due process was violated when the State failed to preserve evidence that could be exculpatory, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. And when considering materiality, . . . the fact that evidence may be "potentially useful" in a defendant's attempt at exoneration is insufficient to sustain a claim that the defendant has suffered an abridgment of due process of law due to the destruction or loss of the evidence. The key is the "apparent exculpatory value" of the evidence prior to its destruction or loss and "apparent" in this context

has been defined as "readily seen; visible; readily understood or perceived; evident; obvious."[19]

Here, regardless of whether a forensic evaluation of the back seat would be relevant to a crime alleged in the front seat, it is obvious that the vehicle itself was the scene of the alleged crimes, so it should have been preserved. But "[e]ven if we were to assume that the State's handling of the [vehicle] indicated careless, shoddy[,] and unprofessional [storage] procedures, [storage in the impound lot] did not indicate that the police in bad faith attempted to deny [Gunsby] access to evidence that they knew would be exculpatory."[20] The record shows that police stored Gunsby's impounded vehicle as it routinely did with such vehicles, and there was no evidence that the police themselves damaged his vehicle. This supports the trial court's finding that police did not store his vehicle or deprive him of access to it in bad faith. "Thus, [Gunsby]

---

[19] (Citations and punctuation omitted.) *State v. Newberry*, 366 Ga. App. 567, 569 (883 SE2d 581) (2023).

[20] (Punctuation omitted.) *Hill v. State*, 308 Ga. 638, 649 (3) (842 SE2d 853) (2020), quoting *Davis v. State*, 285 Ga. 343, 349 (9) (676 SE2d 215) (2009).

cannot establish that the State violated his right to due process" such that Counts 4, 5, and 6 should have been dismissed.[21]

*Judgments affirmed. Gobeil, J., and Senior Judge C. Andrew Fuller concur.*

---

[21] *Goins v. State*, 310 Ga. 199, 203 (3) (850 SE2d 68) (2020). See also *Davis*, 285 Ga. at 349 (9) ("Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.") (citation and punctuation omitted).